1                   UNITED STATES DISTRICT COURT

2                EASTERN DISTRICT OF PENNSYLVANIA

3   IN RE: JOSEPH D. LENTO,

4              Respondent.         Case No. 2:13-mc-00195-PD

5            **FILED**         Philadelphia, Pennsylvania
                             July 15, 2019

6           JUL 22 2019       2:28 p.m.

7         KATE BARKMAN, Clerk
        By_____ Dep. Clerk

8

9     TRANSCRIPT OF ATTORNEY DISCIPLINE HEARING: DISBARMENT
        BEFORE THE HONORABLE PAUL S. DIAMOND,
          THE HONORABLE ROBERT R. KELLY

10       UNITED STATES DISTRICT COURT JUDGES
        AND THE HONORABLE MARILYN HEFFLEY

11        UNITED STATES MAGISTRATE JUDGE
             **(UNDER SEAL)**

12

13   APPEARANCES:

14   For the Respondent:        Steven C. Feinstein, Esquire
                           Optimum Law Group, PC

15                            1500 Market Street
                           East Tower, 12th Floor

16                            Philadelphia, PA  19102

17   Court Recorder:            Kenneth E. Duvak

18   Transcription Service:      Chris Hwang
                           Abba Reporting

19                            PO Box 223282
                           Chantilly, Virginia  20153

20

21

22

23

24   Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

25

1

**INDEX**

2

3     WITNESSES FOR RESPONDENT

| | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Joseph Lento | 4 | | | |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     (Call to order at 2:28 p.m.)

2     THE CLERK:  All rise.  Court is in session, the

3    Honorable Judges Paul S. Diamond, Marylin Heffley, and Robert

4    R. Kelly presiding.

5     THE COURT:  Please be seated.

6     MR. FEINSTEIN:  Thank you.

7     THE COURT:  How would you like to proceed, counsel?

8     MR. FEINSTEIN:  Well, Your Honor, we'd sort of leave

9    that to the Court's discretion.  This is a simple matter where

10    he was -- Mr. Lento had been suspended in state court and was

11    reinstated without a hearing because of the amount of time.

12     The requirement of course here is different where he

13    had to file a petition because he had been suspended for more

14    than three months.  If Your Honors would like to hear

15    testimony, Mr. --

16     THE COURT:  Perhaps you -- we're -- I'm having

17    trouble hearing you.  Maybe you could remain seated and speak

18    into the microphone and start again?

19     MR. FEINSTEIN:  I'm sorry.  Your Honor, I will

20    certainly leave that to your discretion.  Mr. Lento is here

21    prepared to testify on his behalf, but the suspension in state

22    court had been for less than a year or I should say less than a

23    year and a day.  So he was reinstated seamlessly without the

24    necessity of a hearing.

25     However, because he was suspended for more than three

1    months, it requires the necessity of a petition he had filed

2    here.

3             Since his reinstatement in Pennsylvania, he had been

4    re-instated in New Jersey, which was -- the suspension was just

5    for reciprocity and he actually would obtain a new admission in

6    the state of New York after going through an appropriate

7    character committee hearing up there.

8             If Your Honors would like to hear from Mr. Lento, I'd

9    be more than happy to put him on.

10            THE COURT:  Mr. Feinstein, this is your case, not

11   ours.

12            MR. FEINSTEIN:  Okay, then I call Joseph Lento to the

13   stand.

14            THE COURT:  Very well.

15            THE COURT RECORDER:  Please state your name for the

16   record?

17            MR. LENTO:  Joseph Lento, L-E-N-T-O.

18            THE COURT RECORDER:  Please raise your right hand.

19                          JOSEPH LENTO

20   Respondent, having been duly sworn testified as follows:

21   BY MR. FEINSTEIN:

22        Q    Mr. Lento, how old are you?

23        A    41 years old.

24        Q    And when were you first licensed in the Commonwealth

25   of Pennsylvania?

1       A       2008.

2       Q       And your suspension in Pennsylvania start -- was in

3   2013; is that correct?

4       A       Yes, it started July of 2013.   The issue first arose

5   in the fall that led to the suspension in the fall of 2011.

6       Q       So, in fact, you'd only been in practice in

7   Pennsylvania for a matter of a few years before you were

8   suspended?

9       A       Less than three years.   Well, the issue arose less

10  than -- with my practicing less than three years.   The

11  suspension itself, which I consented to, took effect in July of

12  2013.

13              THE COURT:  Mr. Lento, you were a juvenile probation

14  officer?

15              MR. LENTO:  Yes, Your Honor.

16              THE COURT:  Beginning when?

17              MR. LENTO:  February of 2003.

18              THE COURT:  Until when?

19              MR. LENTO:  October or so.   The fall of 2008, I

20  believe.

21              THE COURT:  And it's very -- the record's unclear.

22  Were you fired?

23              MR. LENTO:  I had gone out on FMLA, Your Honor.   I'd

24  sought -- it's been a while, forgive me.   I sought that that be

25  renewed --

1    THE COURT:  You're telling me you don't remember how

2 you --

3    MR. LENTO:  That these -- no, no, I wasn't --

4    THE COURT:  -- stopped being a probation officer?

5    MR. LENTO:  I'm sorry, I wasn't fired.  I had gone

6 out on FMLA.  At least I don't know what the exact terminology

7 was.

8    I could explain, though, if I it's all right.  I had

9 gone out on FMLA.  I sought the deputy renewed.  It wasn't

10 renewed.

11    I didn't return to work.  I don't know if that was

12 technically say terminated, but I don't know what the

13 terminology was in other words, forgive me.

14    THE COURT:  Well, you simply stopped showing up for

15 work?

16    MR. LENTO:  That would be relatively accurate, Your

17 Honor, yes.

18    THE COURT:  So you quit?

19    MR. LENTO:  Essentially.

20    THE COURT:  And when did you become a member of the

21 Bar of Pennsylvania?

22    MR. LENTO:  October of 2008.

23    THE COURT:  So this was roughly at the same time you

24 became a member of the Pennsylvania Bar?

25    MR. LENTO:  Yes, Your Honor.

1          THE COURT:  And you were suspended by the State

2    Supreme Court when?

3          MR. LENTO:  July of 2013.

4          THE COURT:  When did you notify the New Jersey

5    District Court about suspension?

6          MR. LENTO:  Everybody immediately, Your Honor.

7          THE COURT:  It appears from the record in front of us

8    that New Jersey wasn't notified until five years later.  Is

9    that incorrect?

10          MR. LENTO:  It wouldn't sound accurate to me.  I know

11    I had notified the state of New Jersey immediately per the

12    instructions of my attorney at that time.

13          New Jersey, the District Court I believe it was, they

14    did contact me in the -- I believe the spring of 2017 when the

15    New Jersey reciprocal discipline was being finalized.  I'd

16    explained the circumstances.

17          THE COURT:  I'm not understanding any of this.  You

18    notified us and we imposed reciprocal discipline within a

19    matter of a month or two.  When did you notify New Jersey?

20          MR. LENTO:  My recollection would be I had notified

21    everybody --

22          THE COURT:  When a lawyer tells me my recollection

23    about something that should be important in his life, I don't

24    really take well to that.

25          MR. LENTO:  I understand, Your Honor.

1          THE COURT:  When did you notify New Jersey?

2          MR. LENTO:  I notified everybody as far as I

3     understood whom I was supposed to notify immediately.

4          THE COURT:  As far as I understood I was supposed to

5     notify immediately.  You're not answering my question.  When

6     did you notify New Jersey?  If you don't remember, say you

7     don't remember.

8          MR. LENTO:  I know I notified the state of New Jersey

9     in July of 2013.

10         THE COURT:  And how did you notify the state of New

11     Jersey?

12         MR. LENTO:  By mail.

13         THE COURT:  By letter.  Do you have a copy of that

14     letter?

15         MR. LENTO:  In my records I'm -- I probably would.

16         THE COURT:  Probably would.

17         Could you, Mr. Feinstein, provide us with a copy of

18     that letter?

19         MR. FEINSTEIN:  I cannot today, Your Honor, but I'll

20     be more than happy to supplement the record with a copy of that

21     letter.

22         THE COURT:  That's fine.  And when did you notify the

23     District of New Jersey?

24         MR. LENTO:  Your Honor, I -- forgive me, I would

25     imagine at the same time.

1          THE COURT:  You would imagine.

2          MR. LENTO:  I --

3          THE COURT:  And how would you imagine you let the

4     District of New Jersey know?

5          MR. LENTO:  I really don't recall, Your Honor.  My

6     understanding of what I was supposed to do at that time was to

7     notify the state of New Jersey and the Eastern District in July

8     of 2013 when the suspension took effect.

9          THE COURT:  So you didn't think you had to notify the

10    District Court in New Jersey; is that fair?

11         MR. LENTO:  That may be fair to say.  I certainly

12    didn't actively not notify a court.  I mean, I notified the

13    Eastern District.  I notified the state of New Jersey.

14         I haven't done any work in the Federal District Court

15    of New Jersey.  So there would be no reason for me not to do so

16    if I had understood that at the time.

17         THE COURT:  The materials we have show that the New

18    Jersey District Court didn't act on your discipline until 2018.

19         MR. LENTO:  It sounds about accurate, Your Honor.  I

20    got a phone call or a letter of correspondence.  I know I spoke

21    to the District Court in the -- well, I think it would be the

22    spring of 2017, two years back, when the New Jersey reciprocal

23    discipline was being finalized.

24         THE COURT:  Well, the order from the Chief Justice of

25    New Jersey Supreme Court, Stuart Rabner, is dated 21st of June,

1   2017.  Are you saying that it took New Jersey four years after

2   you notified them to impose reciprocal discipline?

3               MR. LENTO:  Your Honor, could I just verify just one

4   thing, please?  Judge Rabner --

5               THE COURT:  You can clarify more than one thing.

6               MR. LENTO:  Sure, sure.  Judge Rabner, like that's

7   the state's -- forgive me if I'm ignorant about certain

8   matters.

9               Judge Rabner, I remember, I appeared before him.

10  That would have been in the spring, I believe it was -- I'd

11  have to double check the time, maybe the spring of 2017.  It

12  did take New Jersey a significant amount of time to follow up

13  on the discipline.

14              THE COURT:  And you never notified the New Jersey

15  District Court?

16              MR. LENTO:  I don't -- I may not have, Your Honor.

17  I'm not sure off-hand.

18              THE COURT:  All right, well --

19              MR. LENTO:  I'd have to double check.  But again, if

20  I had not, it would be an oversight, because I notified again

21  the Eastern District and the state of New Jersey per the

22  expectation immediately.  I would have no reason not to notify

23  the District Court, other than just not realizing at the time.

24              THE COURT:  Don't you know that under our rules,

25  you're obligated to notify once you -- once discipline was

1    imposed and under the Pennsylvania rules, you were obligated to

2    notify every Bar in which you're a member?

3              MR. LENTO:  Yes, Your Honor.

4              THE COURT:  But you -- so it was an oversight.  You

5    didn't do what the law required you to do?

6              MR. LENTO:  I would have to double check my records.

7    If I didn't do it, it would have been a -- an unintentional

8    oversight.

9              THE COURT:  Uh-huh.  And you're going to provide us

10   with whatever his record shows; is that right, Mr. Feinstein?

11             MR. FEINSTEIN:  Yes, Your Honor.

12             THE COURT:  And why were you suspended in the first

13   place?  What was it you did?

14             MR. LENTO:  I made a poor decision.  I went to law

15   school at night, started my own practice day one.  To best

16   explain it, the marketing idea that I had was to send directed

17   letters to people who had posted bail in Philadelphia.  I knew

18   of somebody who had a bail list with people had posted bail.

19   The --

20             THE COURT:  Mr. Lento?

21             MR. LENTO:  Yes?

22             THE COURT:  You knowingly violated the Code of

23   Professional Conduct; is that right?

24             MR. LENTO:  It was as much naiveté and

25   overzealousness.

1          THE COURT:  Yes or no?

2          MR. LENTO:  I --

3          THE COURT:  Did you know you were violating the Rules

4  of Professional Conduct?

5          MR. LENTO:  I can't go that far with it respectfully.

6          THE COURT:  You didn't know you were doing something

7  wrong?

8          MR. LENTO:  I didn't -- if I -- I didn't know the

9  implications of what would be involved.

10         THE COURT:  I'm sorry, sir.  You're going to have a

11  very difficult time demonstrating by clear and convincing

12  evidence that you have the moral fitness to practice before us

13  if you refuse to answer simple questions.

14         MR. LENTO:  Yes, Your Honor.

15         THE COURT:  Did you know you were violating the Code

16  of Professional Conduct when you told various court officials

17  that you would pay them if they would give your card out and

18  the cards bore fruit?

19         MR. LENTO:  Yes, Your Honor.

20         THE COURT:  You knew?

21         MR. LENTO:  With the benefit of hindsight, I realize,

22  yes.

23         THE COURT:  Not with the benefit of hindsight.  At

24  the time you did it?

25         MR. LENTO:  Yes, Your Honor.

1    THE COURT:  In fact, isn't that why you told Ms.

2    Biaggio (phonetic), this is just between us, because you didn't

3    want her to blow your cover?

4    MR. LENTO:  Or -- yes.

5    THE COURT:  You're not sure?

6    MR. LENTO:  I would like to add something, but it's

7    probably not worth my adding, but I would say, yes, Your Honor.

8    THE COURT:  I don't know what that means you'd like

9    to add something, but it's not worth your adding.

10   MR. LENTO:  The aspect with Ms. Biaggio, it's not an

11   entirely accurate reflection.  I guess Your Honor may not

12   be -- noting it at the moment, but I didn't -- it reflects that

13   I liked forced her to do something.  I -- that wasn't the case.

14   But yes, Your Honor.

15   THE COURT:  I'm not suggesting that you forced her to

16   do something.

17   MR. LENTO:  I know.

18   THE COURT:  It's these are the facts you stipulated

19   to.

20   MR. LENTO:  Yes, Your Honor.

21   THE COURT:  Respondent explained to Ms. Biaggio that

22   this arrangement would be just between her and Respondent.

23   Respondent reiterated that this arrangement was just between

24   her and Respondent.  Is that what you did?

25   MR. LENTO:  Yes, Your Honor.

1          THE COURT:  And you did it -- why did you tell her it

2    would just stay between the two of us?

3          MR. LENTO:  Well, I realized I was doing something

4    wrong.

5          THE COURT:  You sure?

6          MR. LENTO:  Yes, Your Honor.

7          THE COURT:  And so, you haven't been a member of the

8    Bar of this Court for how long?

9          MR. LENTO:  I have not since -- I would imagine it

10   would be since 2013.

11         THE COURT:  You have a website, correct?

12         MR. LENTO:  Yes, Your Honor.

13         THE COURT:  And you created that website presumably?

14         MR. LENTO:  I --

15         THE COURT:  Your firm website?

16         MR. LENTO:  Yes, Your Honor.

17         THE COURT:  Got a picture of yourself on the art

18   museum steps like Rocky, correct?

19         MR. LENTO:  Yes, Your Honor.

20         THE COURT:  Drinking a bunch of raw eggs in the

21   morning, correct?

22         MR. LENTO:  Yes, Your Honor.

23         THE COURT:  In your media appearances, you

24   state -- you have a picture of a boat that was recently the

25   subject of a federal raid and you state, "Attorney Joseph D.

1   Lento represents one of the Defendants in the case involving

2   one of the largest drug seizures in the United States history."

3   Is that a true statement?

4            MR. LENTO:  I'm involved in a limited capacity, Your

5   Honor.

6            THE COURT:  You don't want to tell me whether or not

7   it's a true statement?

8            MR. LENTO:  It's a true statement, Your Honor.

9            THE COURT:  How is it a true statement that you're

10   representing defendants who are charged in a court where you

11   can't appear?

12            MR. LENTO:  I was working with a colleague, Your

13   Honor, on a case.

14            THE COURT:  Well, then you don't represent him, do

15   you?

16            MR. LENTO:  I get involved accordingly, Your Honor.

17            THE COURT:  How can you be involved accordingly?  You

18   can't be involved at all, can you?

19            MR. LENTO:  I'm saying I could follow up accordingly,

20   Your Honor, as to whatever may be needed in that regard.

21            THE COURT:  Okay, follow up accordingly.  I don't

22   know what that means.  Follow up in what respect?

23            MR. LENTO:  To reflect what would be need to be

24   reflected at this time.

25            THE COURT:  You mean you would correct your website?

1          MR. LENTO:  Yes.

2          THE COURT:  Well, why did you misstate it in your

3  website?  Why did you suggest you were practicing in this

4  Court?

5          MR. LENTO:  I didn't -- I don't believe I had gone

6  that far with it, Your Honor.

7          THE COURT:  You don't think that's what this suggests

8  is that you practice in federal court?  You don't think that's

9  what it suggests?

10          "Attorney Joseph D. Lento represents one of the

11  defendants in the case involving one of the largest drug

12  seizures in United States history."

13          The case is here.  McSwain's got it all of his

14  website.  You don't think it suggests you were practicing in

15  this Court?

16          MR. LENTO:  It may, Your Honor.

17          THE COURT:  May.  You also say that you're -- you

18  filed a lawsuit on behalf of plaintiffs against the Southern

19  Ohio Correctional Facility, a federal civil rights lawsuit.

20  Where did you file that?

21          MR. LENTO:  In Ohio, Your Honor.

22          THE COURT:  And you -- what did you get admitted Pro

23  Hac?

24          MR. LENTO:  Yes.

25          THE COURT:  And did you inform the Ohio authorities

1   that you were not licensed to practice here?

2        MR. LENTO:   In the Eastern District?

3        THE COURT:   Yeah.

4        MR. LENTO:   The office took care of it, Your Honor.

5   I would imagine that they did.

6        THE COURT:   You would imagine that they did.   We'd

7   like to see those papers, too, Mr. Feinstein?

8        MR. FEINSTEIN:   Yes, sir.

9        THE COURT:   Do you have anything else for us, Mr.

10  Feinstein?

11       MR. FEINSTEIN:   If I might, Your Honor?

12       THE COURT:   You may.

13  BY MR. FEINSTEIN:

14       Q   Excuse me.   What was the original recommendation of

15  the court in New Jersey with regard to separate charges -- with

16  regard to the charges that were pending in Pennsylvania?

17       A   A reprimand.

18       Q   And was one of the reasons why it took so long for

19  the New Jersey court to issue whatever its sanction was, was

20  because of the harsher sanction that was here in Pennsylvania?

21       A   In part, yes.

22       Q   And then, you had the reciprocity was taking place in

23  New Jersey.   And for how long were you actually suspended in

24  New Jersey once the -- once it was retroactive at -- excuse me,

25  let me rephrase that.   Was your suspension in New Jersey made

1 retroactive?

2      A      Yes.

3      Q      So how long have you actually spent suspended for in

4 New Jersey prior to having your license reinstated there?

5      A      I'm sorry, could you -- I could --

6      Q      Once the reciprocity went into effect and they did it

7 retroactively, how long was your actual period of suspension in

8 New Jersey?

9      A      Well, I mean, it was retroactive to July 2013, but

10 in -- I had stopped practicing altogether.  It was like a self-

11 imposed suspension until -- well, the suspension took effect in

12 the spring 2017, about maybe a month and a half or so.

13     Q      Okay, when you were communicating with the District

14 Court of the District of New Jersey, what was its ultimate

15 decision about whether you should be suspended?

16     A      The -- just to be clear, this is with Judge Rabner as

17 the Supreme Court justice?

18     Q      I'm talking about the District of New Jersey, federal

19 court in New Jersey, were you suspended in federal court New

20 Jersey, regardless of when you informed them, did you receive a

21 suspension in the District Court of New Jersey?

22     A      No.

23     Q      Okay, since you were suspended in Pennsylvania and

24 reinstated in Pennsylvania, have you applied for licensure in

25 any other states?

1    A    Yes.

2    Q    What states?

3    A    New York State.

4    Q    Okay, were you in fact licensed and admitted into the

5    state of New York?

6    A    No.  Oh, you mean -- yes, yes, I was.

7    Q    Okay, did you advise the state of New York of your

8    suspension in Pennsylvania, New Jersey, and in federal court as

9    is required?

10    A    I informed them of the suspension, yes.

11    Q    Did you go through a character committee in New York

12    prior -- a character committee review in New York prior to the

13    time of your reinstatement -- being admitted in New York?

14    A    Yes.

15    Q    Okay, have you been charged or accused of unethical

16    conduct in any of the jurisdictions that -- oh, strike that.

17         Other than the events that led to your suspension in

18    Pennsylvania, and then the reciprocity here and in New Jersey,

19    have you ever been the subject of any disciplinary accusations

20    or proceedings in any jurisdiction?

21    A    No.

22    Q    Okay.

23         THE COURT:  When you were suspended in Pennsylvania,

24    at that time, you were a member of the Pennsylvania Bar, the

25    District of New Jersey Bar, the New Jersey Bar, and the Eastern

1   District Bar.  Any other Bars?

2              MR. LENTO:  No, Your Honor.

3              THE COURT:  You sure?

4              MR. LENTO:  Yes.

5              THE COURT:  We would like from you, Mr. Feinstein, a

6   document indicating what Bars your client was a member of at

7   the time of his suspension?

8              MR. FEINSTEIN:  Yes, sir.

9              THE COURT:  If he was a member of any other Bars,

10  whether or not he notified those Bars?

11             MR. FEINSTEIN:  Yes, sir.

12             THE COURT:  And not just a statement from you or from

13  your client, but there are national databases, for instance,

14  that show where attorneys are admitted.

15             MR. FEINSTEIN:  I'll do the search myself, Your

16  Honor.

17             THE COURT:  Very well.

18  BY MR. FEINSTEIN:

19      Q    During the period of time that you were suspended

20  from practice in Pennsylvania, did you -- what did you do to

21  make money?

22      A    I sought a real estate license.  I got licensed as a

23  real estate sales person.  Prior to that taking place, I took a

24  job with Thomson Reuters in New York City doing say legal sales

25  of sorts, commuted from Philadelphia to Manhattan for a period

1   of time, but the opportunity would have been there based on

2   what would have been involved.  So I pursued the real estate

3   after I got my real estate license.

4       Q   Typically, when a person is suspended from practice

5   and they have the opportunity to be reinstated, they -- if they

6   have to file a petition, they do so, why has it taken you six

7   years to file a petition in this Court in order to be

8   reinstated in practice here?

9       A   In part, I've been trying my best to get back on my

10  feet since this issue.  It has taken a toll.  I do with the

11  Court's proffer agreement have the opportunity to pursue

12  federal cases.  And it was deemed that that would be a suitable

13  time to follow up in that regard.

14      THE COURT:  Is it because of this big drug case --

15      MR. LENTO:  No, Your Honor.

16      THE COURT:  -- that you wanted to get admitted here?

17      MR. LENTO:  No, Your Honor.  That -- well, I mean,

18  that would -- it would be appreciated, Your Honor, but that

19  wasn't the reason why.

20      THE COURT:  Well, you're being very unclear.  Why did

21  you wait so long before you petitioned for reinstatement here?

22      MR. FEINSTEIN:  Your Honor, if I might?

23      THE COURT:  Go ahead.

24      MR. FEINSTEIN:  I filed this petition on his behalf

25  long before that was even a possibility.  So that was not a

1    determinative --

2          THE COURT:   You filed a petition before us?

3          MR. FEINSTEIN:   I filed the petition in this Court at

4    least two months ago, so --

5          THE COURT:   No, no, I'm asking why it took him as

6    long as it did --

7          MR. FEINSTEIN:   Oh, I'm sorry, maybe I misunderstood

8    your question.   Because you were asking about whether it was

9    related to this drug case --

10          THE COURT:   No, no, I'm satisfied that it's not.

11          MR. FEINSTEIN:   Okay, that's -- okay.

12          THE COURT:   But I'm asking why --

13          MR. FEINSTEIN:   I was answering that question, Your

14    Honor.

15          THE COURT:   -- it took him so -- you had asked him

16    why it took him so long --

17          MR. FEINSTEIN:   Yeah.

18          THE COURT:   -- to petition for reinstatement here.

19          MR. FEINSTEIN:   Yeah, I did, but I was following up

20    on your question as to whether it was related to the drug --

21          THE COURT:   Understood, understood.

22    BY MR. FEINSTEIN:

23          Q    And, also, you work currently for Optimum Law Group;

24    is that correct?

25          A    Yes.

1      Q     And that's in addition, you have your own website,

2    but -- and I'm also associated with Optimal Law Group; is that

3    correct?

4      A     Yes.

5      Q     Okay, and you will be working under my supervision in

6    federal court if you are reinstated?

7      A     Yes.

8            THE COURT:  Who was your monitor for the year you

9    were on probation?

10           MR. LENTO:  Andres Jalon, Your Honor.

11           THE COURT:  Andres Jalon?

12           MR. LENTO:  Jalon.  He actually hoped to be here

13    today, but he had a --

14           THE COURT:  To the extent you -- Mr. Feinstein, can

15    provide us with a statement under oath from Mr. Jalon, that

16    would be helpful.

17           And to go back to my question, why did you wait five-

18    plus years before you petitioned for reinstatement here?

19           MR. LENTO:  I never had seen, like going back to what

20    I said earlier, Your Honor, it's been a long road getting back

21    on my feet, a lot of say ducks to beat -- gotten in a row.

22           I never had the respective opportunity to

23    say -- start working in federal court on a more -- on a large

24    capacity before my involvement with Optimum Law Group.

25           THE COURT:  Had you had any cases here at all while

1    you were licensed to practice law?

2              MR. LENTO:  No, Your Honor.

3              THE COURT:  And what is it you hope to do in this

4    Court if we admit you?

5              MR. LENTO:  Federal work, Your Honor.

6              THE COURT:  What kind of federal work?

7              MR. LENTO:  Civil injustice, claims work, Your Honor.

8              THE COURT:  Criminal work?

9              MR. LENTO:  It would be a part -- I would like to,

10   Your Honor.  I had applied for the CJA panel way back when, but

11   regardless of that, that wasn't my intention in terms of

12   petitioning the Court.

13             And just to respectfully reiterate, Your Honor, I had

14   petitioned.  It was in the spring, colleagues of mine had

15   prodded me to do so and had prodded me to do so.

16             I mean, I would need to take the initiative on my

17   own, obviously, and that's why I had followed up in that

18   regard.  I felt that it was time respectfully to -- for me to

19   try to appear before the Honorable Court and --

20             THE COURT:  Did you work as a probation officer while

21   you went to law school?

22             MR. LENTO:  Yes, Your Honor.

23             THE COURT:  So you went to law school at night?

24             MR. LENTO:  Yes, Your Honor.

25             THE COURT:  How long were you at -- is this Temple?

1        MR. LENTO:  Yes, Your Honor.

2        THE COURT:  How long?

3        MR. LENTO:  For fours years.

4        THE COURT:  Four years.

5        MR. FEINSTEIN:  I have nothing further, Your Honor.

6        JUDGE KELLY:  Nothing.

7        JUDGE HEFFLEY:  I have no questions.

8        THE COURT:  Thank you.

9        MR. LENTO:  Thank you, Your Honor, thank you.

10       THE COURT:  You have anything more, Mr. Feinstein?

11       MR. FEINSTEIN:  I don't.  If you do have a specific

12  time frame in mind --

13       THE COURT:  Uh --

14       MR. FEINSTEIN:  -- that you need these documents by?

15       THE COURT:  We -- the way this process works is this

16  panel will prepare a report and recommendation to the full

17  court.  We will send you and your client a copy of that report

18  and recommendation.

19            You'll have two weeks to file objections.  If you

20  don't intend to file objections, we ask you to let us know

21  sooner.

22            If you do file objections, the R and R with the

23  objections go to the full court and would be taken up at our

24  next meeting, which is unlikely to be before the fall.

25            Can you get us by the end of the week the documents

1   we asked you for?

2           MR. FEINSTEIN:  I can't guarantee that because I

3   don't know what I'm going to be able to recover.

4           THE COURT:  As soon as you can.  As soon as you can.

5           MR. FEINSTEIN:  I'll have it for you by --

6           THE COURT:  One of my law clerks will be in touch

7   with you.

8           MR. FEINSTEIN:  That's fine.

9           THE COURT:  -- to remind you.

10          MR. FEINSTEIN:  I'll have it for you by next week.

11          THE COURT:  All right, anything else you wish to

12  present?

13          MR. FEINSTEIN:  No, thank you, Your Honor.

14          THE COURT:  All right, then we will take the matter

15  under advisement.  Thank you very much.

16          MR. FEINSTEIN:  Thank you.

17          MR. LENTO:  Thank you.

18      (Proceedings concluded at 2:53 p.m.)

19

20

21

22

23

24

25

**CERTIFICATE**

 

 

 

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          <u>July 16, 2019</u>

Chris Hwang                                 Date

Transcriber