## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| | : |
| **IN THE MATTER OF:** | : **MISCELLANEOUS** |
| | : |
| **JOSEPH D. LENTO** | : **No.2:13-MC-00195-PD** |
| | : |

### ORDER

**AND NOW**, this _____ day of _____, 2022, it is hereby **ORDERED** that the Office of Disciplinary Counsel's Motion to Unseal Transcript in Reinstatement Hearing is **GRANTED**.

It is hereby **ORDERED** that the transcript of the July 15, 2019 reinstatement hearing in this matter is unsealed, and the transcript shall be furnished to the Office of Disciplinary Counsel for use in Mr. Lento's pending Pennsylvania disciplinary proceeding.

**AND IT IS SO ORDERED.**

_____
                                              J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
|  | **:** |
| **IN THE MATTER OF:** | **: MISCELLANEOUS** |
|  | **:** |
| **JOSEPH D. LENTO** | **: No.2:13-MC-00195-PD** |
|  | **:** |
|  | **:** |

**MOTION TO UNSEAL
<u>TRANSCRIPT IN REINSTATEMENT HEARING</u>**

To the Honorable Paul S. Diamond, the Honorable Robert Kelly, and the Honorable Marilyn Heffley, Judges of said Court:

Movant, Office of Disciplinary Counsel ("ODC"), by Thomas J. Farrell, Esquire, Chief Disciplinary Counsel, and by Harriet R. Brumberg, Esquire, Disciplinary Counsel, files this motion requesting that this Honorable Committee unseal and release to ODC the transcript of the July 15, 2019 reinstatement hearing in the above-captioned case to be used in a Pennsylvania disciplinary proceeding, and in support thereof alleges:

1. Movant, whose principal office is located at Pennsylvania Judicial Center, Suite 2700, 601 Commonwealth Avenue, P.O. Box 62485, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement ("Pa.R.D.E."), with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all

disciplinary proceedings brought in accordance with the Rules of Disciplinary Enforcement and Rules of Professional Conduct.

2.   Mr. Lento was admitted to practice law in Pennsylvania in 2008 and was assigned attorney identification number 208824.

3.   Pursuant to Pa.R.D.E. 201(a)(3), Mr. Lento is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

4.   By Order dated July 17, 2013, Mr. Lento was suspended from the practice of law in Pennsylvania for one year. ("the Pennsylvania Suspension Order") (Doc. 1)

5.   By Order dated July 30, 2013, the Honorable Petrese B. Tucker, Chief Judge of this Court, directed Mr. Lento to inform the Court, within thirty days, of any claim that the imposition of identical discipline upon the grounds set forth in Local Rule of Civil Procedure 83.6(II)(D), would be unwarranted. (Doc. No. 2)

6.   Mr. Lento did not file any claim opposing the imposition of identical discipline.

7.   By Order dated September 16, 2013, Judge Tucker suspended Mr. Lento from the practice of law in this Court for one year, effective 30 days from July 17, 2013, and until further order of this Court. (Doc. 4)

8.   On September 14, 2014, the Pennsylvania Supreme Court reinstated Mr. Lento to active status, effective immediately.

9.   On May 12, 2019, Mr. Lento filed a Petition for

Reinstatement with this Court. (Doc. 6)

10.   On May 6, 2019, Chief Judge Juan R. Sanchez referred Mr. Lento's reinstatement matter to a Committee, chaired by the Honorable Paul S. Diamond, to make a recommendation to the Court. (Doc. 7)

11.   On July 15, 2019, Mr. Lento's reinstatement hearing was held before this Committee.

12.   By Order dated July 18, 2019, Judge Diamond directed that the audio recording and transcript of the hearing be sealed and impounded "until further order of the Court" (Doc. 10); on July 22, 2019, the transcript was filed under seal with this Court.

13.   On July 23, 2019, Mr. Lento filed a motion to withdraw his petition for reinstatement. (Doc. 14)  In his motion, Mr. Lento wrote that he was seeking to withdraw because:  he and his counsel "did not fully appreciate and/or fully prepare properly for the reinstatement hearing"; there were "a number of issues that were raised by this Honorable Court"; and in the future, Mr. Lento would "seek a new reinstatement hearing where he . . . dealt with the issues raised by this Honorable Court." (*Id.*, ¶¶ 2, 3, 5)

14.   By Order dated July 23, 2019, Judge Sanchez granted Mr. Lento's motion to withdraw his Petition for Reinstatement.

15.   On June 3, 2022, ODC filed a Petition for Discipline against Mr. Lento charging him with violations of the Rules of Professional Conduct in six separate matters. ***Office of***

3

***Disciplinary Counsel v. Joseph P. Lento***, No. 80 DB 2022 (Attachment A)

16.  Mr. Lento's disciplinary hearing is scheduled to be held before a Special Master from January 23, 2023 through January 27, 2023.

17.  D.Bd. Rule § 89.151(a) provides that the receipt of evidence relevant solely to the type of discipline to be imposed shall be deferred until after the hearing committee or special master has found that the evidence establishes a prima facie case of at least one violation of the Rules of Professional Conduct.

18.  D.Bd. Rule § 89.151(b) provides that participants may offer any evidence that "is relevant and material" to the type of discipline to be imposed, and specifies the subjects "particularly helpful to the Board" include "date of admission of each jurisdiction to which admitted" and "a statement of every disciplinary proceeding or procedure of inquiry concerning the standing of the respondent-attorney as a member of any profession." (*Id*. § 89.151(b)(4) and(9))

19.  Should the Special Master find that Mr. Lento committed at least one violation of the Rules of Professional Conduct, then ODC would introduce Mr. Lento's record of attorney discipline and status of admission in each jurisdiction where he was admitted, including the Eastern District of Pennsylvania.

20.  Mr. Lento's disciplinary and reinstatement proceedings before this Honorable Court are relevant considerations on the type of discipline to be imposed in the Pennsylvania disciplinary proceeding.

21.  Also relevant would be the transcript of the July 15, 2019 reinstatement hearing, which currently remains under seal.

22.  Accordingly, ODC requests that the Committee issue an Order that unseals the transcript of the July 15, 2019 hearing so that ODC can introduce the transcript at the D.Bd. Rule 89.151(b) portion of Mr. Lento's disciplinary hearing.  ODC will provide a copy of the transcript to Mr. Lento.

23.  Mr. Lento will suffer no prejudice if the transcript is unsealed.  The docket entries, motions, and Court orders in Mr. Lento's reinstatement hearing are public records.  Should Mr. Lento believe after reviewing the July 15, 2019 reinstatement hearing transcript that there is confidential or privileged information that should not be disclosed to the public,[1] he can apply for a protective order pursuant to Disciplinary Board Rule § 93.106(b), which are granted for "good cause shown."  If a protective order would be granted, the transcript will be treated as a confidential document.

---

[1] Under Pa.R.D.E. 402(a)(1), Pennsylvania disciplinary proceedings are open to the public.

24.   For each of these reasons and the reasons set forth in the accompanying Memorandum of Law, ODC maintains that the transcript of the July 15, 2019 reinstatement hearing should be unsealed for ODC's use in connection with Mr. Lento's scheduled disciplinary proceeding.

WHEREFORE, the Office of Disciplinary Counsel respectfully requests that this Honorable Committee enter an order unsealing the transcript of the July 15, 2019 reinstatement hearing.

OFFICE OF DISCIPLINARY COUNSEL

Thomas J. Farrell
Chief Disciplinary Counsel

By_____
    Harriet R. Brumberg
    Disciplinary Counsel
    Pa. Attorney Registration No. 31032

1601 Market Street
Suite 3320
Philadelphia, PA  19103
(215) 560-6296

BEFORE THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL,: No.    Disciplinary Docket
                       Petitioner :    No. 3
                                  :
          v.                      : No.   DB
                                  :
                                  : Atty. Registration No. 208824
JOSEPH D. LENTO                   :
                       Respondent : (Philadelphia)

## **PETITION FOR DISCIPLINE**

Petitioner, Office of Disciplinary Counsel, by Thomas J. Farrell, Esquire, Chief Disciplinary Counsel, and by Harriet R. Brumberg, Esquire, Disciplinary Counsel, files the within Petition for Discipline, and charges Respondent, Joseph D. Lento, with professional misconduct in violation of the Rules of Professional Conduct ("RPC") and Pennsylvania Rules of Disciplinary Enforcement ("Pa.R.D.E.") as follows:

1. Petitioner, whose principal office is located at PA Judicial Center, Suite 2700, 601 Commonwealth Avenue, P.O. Box 62485, Harrisburg, PA 17106-2485, is invested pursuant to Pa.R.D.E. 207, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings.

**Attachment A**

2.     Respondent, Joseph D. Lento, was born in 1977, and was admitted to practice law in the Commonwealth on October 23, 2008.

3.     Respondent maintains an office for the practice of law at 1500 Walnut Street, Suite 500, Philadelphia, PA 19102.

4.     Pursuant to Pa.R.D.E. 201(a)(1), Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

**CHARGE I:   JOHN E. GARDNER MATTER**

5.     On December 21, 2016, John C. Gardner, Sr., was arrested and charged with:

a.   Disorderly Conduct, (Summary), 18 Pa.C.S.A. § 5503(a)(4);

b.   Recklessly Endangering Another Person, (M-2), 18 Pa.C.S.A. § 2705;

c.   Marijuana-Small Amount, (M), 35 Pa.C.S.A. § 780-113(a)(31)(i); and

d.   Use/Possession of Drug Paraphernalia, (M), 35 Pa.C.S.A. § 780-113(a)(32).

6.     Pursuant to a negotiated guilty plea, on January 25, 2017, Mr. Gardner pleaded guilty to Disorderly Conduct and the Luzerne County District Attorney's Office dismissed the pending misdemeanor charges.

7.     In August 2018, Mr. Gardner contacted Respondent about expunging his criminal conviction, during which time

2

Respondent explained that it would take between 6 to 18 months to expunge Mr. Gardner's criminal conviction.

8.   Thereafter, on August 14, 2018:

    a.   Respondent gave Mr. Gardner a fee agreement for "an expungement of the applicable charges" for a fee of $1,500 plus filing fees and costs; and

    b.   Mr. Gardner signed the fee agreement, and Respondent received $1,500 for the representation.

9.   Title 18 Pa.C.S.A. § 9122(b)(3)(i) provides, in pertinent part, that criminal history record information may be expunged when "an individual who is the subject of the information petitions the court for the expungement of a summary offense and has been free of arrest or prosecution for five years following the conviction for that offense."

10.   Respondent failed to:

    a.   act with the competence necessary for the representation as 18 Pa.C.S.A. § 9122(b)(3)(i) provides that Mr. Gardner would not be eligible to apply for expungement of his summary Disorderly Conduct conviction until 2022;

    b.   explain to Mr. Gardner, to the extent necessary for Mr. Gardner to make an informed decision regarding the representation, that Respondent could not expunge Mr. Gardner's summary Disorderly Conduct conviction in 2018 as Pennsylvania law requires an individual to be free of arrest or prosecution for five years

following the summary conviction (18 Pa.C.S.A. § 9122(b)(3)(i)); and

c.   act with the diligence necessary for the representation in that Respondent failed to promptly ascertain that Mr. Gardner was convicted in 2017, and that 18 Pa.C.S.A. § 9122(b)(3)(i) required Mr. Gardner to wait until 2022 before he would be eligible to have his criminal conviction expunged.

11.   From time to time after Respondent was retained, Mr. Gardner would email Respondent regarding the status of his expungement.

12.   In response to Mr. Gardner's reasonable requests for information about the status of his case, Respondent made repeated reassurances to Mr. Gardner that Respondent was handling his legal matter, including, "YEA, boss i'm working on it . . . were [sic] getting there."

13.   Respondent engaged in conduct involving deceit and misrepresentation when Respondent advised Mr. Gardner that he was working on his expungement matter and "getting there" as Mr. Gardner would not be eligible for expungement of his summary conviction until 2022.

14.   On October 17, 2018, Respondent filed a Petition for Expungement Pursuant to Pa.R.Crim.P. 790 in the Court of Common Pleas of Luzerne County, seeking to expunge Mr. Gardner's arrest on the following charges, all of which had been dismissed:   Recklessly Endangering Another Person;

4

Marijuana-Small Amount; and Use/Possession of Drug Paraphernalia. ***Commonwealth v. John E. Gardner***, CP-40-MD-0001427-2018.

> a. Respondent did not enter his appearance in Mr. Gardner's legal matter.

15. On December 10, 2018, Deputy District Attorney Chester F. Dudick, Jr., Luzerne County, submitted the Commonwealth's Response to the Expungement Petition, objecting to the expungement "as any dismissal of charges was in consideration for a guilty plea and thus defendant was not entitled to expungement."

16. By email to Tara Gardner, wife of Mr. Gardner, sent at 5:50 a.m. on December 21, 2018, Respondent advised that:

> a. the Commonwealth had objected to the Expungement Petition;
>
> b. Respondent was attaching the Commonwealth's response;
>
> c. Respondent could challenge the Commonwealth's response by filing a formal motion with the Court and having a contested hearing on the motion; and
>
> d. Mr. Gardner should let Respondent know how he wished to proceed.

17. By responsive email to Respondent sent at 4:04 p.m. on December 22, 2018, Mr. Gardner wrote that he "would like to proceed" and to let him know the "next step."

18.   Over three months later, by email to Mrs. Gardner sent at 7:39 p.m. on April 9, 2019, Respondent:

a.   informed Mr. Gardner that Respondent was attaching a new engagement letter to handle Mr. Gardner's contested expungement proceeding; and

b.   requested that Mr. Gardner advise Respondent of "the exact reasons why [Mr. Gardner's] record is causing issues" for him.

19.   By email to Mrs. Gardner sent at 7:40 p.m. on April 9, 2019, Respondent attached his engagement letter that he had inadvertently omitted from his prior email.

20.   Respondent's engagement letter provided that:

a.   Respondent had agreed to represent Mr. Gardner "in connection with seeking a hearing to request that the applicable charges be expunged from [his] criminal record";

b.   Respondent's fee for legal services was $7,500; and

c.   Mr. Gardner had paid Respondent's fee in full.

21.   On April 16, 2019, Mr. Gardner sent an email to Respondent apologizing for his delay in explaining that Mr. Gardner sought expungement because he wanted to continue to travel to Canada with his children, would like to buy his son his first hunting rifle, and he did nothing wrong.

22.   By email to Respondent sent at 4:23 p.m. on April 24, 2019, Mr. Gardner inquired whether Respondent had

received his earlier email; by email to Mr. Gardner sent at 8:21 p.m. on April 24, 2019, Respondent advised Mr. Gardner that he would "continue to work on things."

23. Respondent, however, did not communicate further with Mr. Gardner about his legal matter.

24. On or before May 29, 2019, Mr. Gardner retained Thomas Biemer, Esquire, to handle his expungement matter; and on May 29, 2019, Mr. Biemer informed Respondent that Mr. Gardner had retained him to handle his expungement matter.

25. By email to Mr. Biemer sent at 5:57 p.m. on May 29, 2019, Respondent advised that he was involved in ongoing negotiations with the Luzerne County District Attorney's Office about Mr. Gardner's expungement, attached a copy of the Commonwealth's December 10, 2018 response to the Expungement Petition, and attached a draft Petition to Redact.

26. Although Respondent knew that Mr. Gardner had retained another lawyer to handle his legal matter, Respondent failed to promptly refund the unearned portion of his $7,500 legal fee upon Mr. Gardner's termination of Respondent's representation, which occurred less than two months after Respondent was retained.

7

27.  Respondent attempted to charge an excessive fee for his representation of Mr. Gardner.

28.  On September 24, 2020, Mr. Gardner filed a Statement of Claim with the Pennsylvania Lawyers Fund for Client Security (Fund) seeking a refund of Respondent's unearned fee.

> a.  In his Statement of Claim, Mr. Gardner explained that Respondent "was hired to get my prior conviction expunged, but the conviction was too recent to be expunged, which should have been obvious from my first consultation."

> b.  The Fund notified Respondent of Mr. Gardner's Statement of Claim.

29.  By letter to Mr. Gardner dated June 28, 2021, Respondent enclosed a check written from the Operating Account of Lento Law LLC and Joseph D. Lento, Esq., to James Gardner, in the amount of $3,500, with the notation "partial refund" in the memorandum portion of the check.

30.  By letter to the Fund dated July 8, 2021, Respondent's counsel wrote that Respondent had tendered a $3,500 reimbursement check to Mr. Gardner; the Fund subsequently dismissed Mr. Gardner's claim.

By his conduct as set forth in paragraphs 5 through 30 above, Petitioner believes and therefore avers that Respondent has violated the following Rules:

a.   RPC 1.1, which states that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation;

b.   RPC 1.3, which states that a lawyer shall act with reasonable diligence and promptness in representing a client;

c.   RPC 1.4(b), which states that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation;

d.   RPC 1.5(a), which states that a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. The factors to be considered in determining the propriety of a fee include the following: (1) whether the fee is fixed or contingent; (2) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (3) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (4) the fee customarily charged in the locality for similar legal services; (5) the amount involved and the results obtained; (6) the time limitations imposed by the client or by the circumstances; (7) the nature and length of the professional relationship with the client; and (8) the experience, reputation, and ability of the lawyer or lawyers performing the services;

e.   RPC 1.16(d), which states that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to

9

which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law;

f.   RPC 8.4(a), which states that it is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; and

g.   RPC 8.4(c), which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## CHARGE II:  THE HONORABLE EDUARDO C. ROBRENO

31.   Respondent is the managing partner of Optimum Law Group (Optimum), which is headquartered at 300 Atrium Way, Suite 200, Mt. Laurel, NJ  08054.

a.   Optimum subsequently changed its name to "Lento Law Group."

32.   Respondent is not admitted to practice law in the United States District Court for the Eastern District of Pennsylvania (EDPA).

### A. *Red Wine Restaurant* Case

33.   On and before May 8, 2019, Optimum:

a.   employed Steven C. Feinstein, Esquire, as an attorney;

b.   assigned Mr. Feinstein to represent Mr. Eduardo Rosario; and

c.   requested that Mr. Feinstein draft a civil complaint on behalf of Mr. Rosario under the

Americans with Disability Act of 1990, as amended, 42 U.S.C. § 12101 et seq. (ADA).

34.   Mr. Feinstein drafted a complaint:

    a.   on behalf of Mr. Rosario, who requires a wheelchair at all times;

    b.   against Alex Torres Productions, Inc., which is a Florida-based promoter that provides entertainers to various venues;

    c.   against La Guira, Inc. d/b/a Red Wine Restaurant, which is a restaurant that sold Mr. Rosario a ticket to a comedy show promoted by Alex Torres Productions, Inc.; and

    d.   that alleged Defendants' failed to make Red Wine Restaurant accessible to a person in a wheelchair.

35.   Thereafter, Respondent spoke with Mr. Feinstein about Mr. Rosario's civil complaint.

36.   On May 20, 2019, Mr. Feinstein filed the approved civil complaint in the EDPA. (***Red Wine Restaurant*** case)

    a.   The EDPA docketed the ***Red Wine Restaurant*** case at No. 2:19-2222-ER.

    b.   Mr. Feinstein subsequently entered his appearance on behalf of Mr. Rosario.

37.   As the managing partner at Optimum with direct supervisory authority over Mr. Feinstein:

    a.   Respondent failed to make reasonable efforts to ensure that Mr. Feinstein had reasonably concluded that there was a legally supportable basis for bringing a claim under the ADA against Alex Torres Production, Inc.; and

   b. Respondent knew of Mr. Feinstein's conduct at a time when its consequences could be mitigated and failed to take reasonable remedial action.

38. On October 31, 2019, the Honorable Eduardo C. Robreno scheduled a pretrial conference in the **_Red Wine Restaurant_** case for 10:00 a.m. on December 20, 2019.

39. The EDPA sent notice of the December 20, 2019 prehearing conference to the email addresses at OptimumLawGroup.com of Mr. Feinstein, LJones, JEdwards, and office mail "Notices."

40. Optimum and employees of Optimum had notice of the December 20, 2019 prehearing conference.

41. On or about November 27, 2019, Mr. Feinstein resigned from his employment at Optimum.

42. Following Mr. Feinstein's resignation, Optimum blocked Mr. Feinstein from access to his Optimum email account and online case management system, which included Mr. Feinstein's case management calendar with court notices.

43. After Mr. Feinstein resigned, Mr. Feinstein sent emails to employees of Optimum, including Respondent, Office Manager J. Edwards, Terri Morphew, and David Haslip, requesting that Optimum file substitutions of appearance in all Mr. Feinstein's cases that had originated with Optimum.

44.   Respondent knew that Mr. Feinstein requested that Optimum file substitutions of appearance on all of Mr. Feinstein's cases that originated with Optimum.

45.   Members of Respondent's law firm knew that Mr. Feinstein requested that Optimum file substitutions of appearance on all of Mr. Feinstein's cases that originated with Optimum.

46.   As the managing partner of Optimum, Respondent failed to act with the competence and diligence necessary for the representation and assign substitute counsel to attend the December 20, 2019 prehearing conference to represent Mr. Rosario in the **Red Wine Restaurant** case.

47.   At 10:28 a.m. on December 20, 2019, a pretrial conference was held before Judge Robreno, during which time defendant Alex Torres appeared *pro se* and Mr. Feinstein did not appear to represent Mr. Rosario.

48.   When Mr. Feinstein failed to appear to represent Mr. Rosario, Judge Robreno called Mr. Feinstein on the telephone and had a telephonic prehearing conference, during which time:

> a.   Mr. Feinstein stated that he had instructed Respondent and other Optimum employees to substitute his appearance in all his cases (PHC N.T. 12/20/19 at p. 4);
>
> b.   Judge Robreno found it was "troublesome" that Mr. Feinstein did not do any research

13

concerning whether Mr. Rosario could sue the promoter (*id*. at pp. 8-9; *see also* pp. 17-18);

c. Judge Robreno noted that it was an unfair burden on Mr. Torres to have driven from Florida and there was no one in the courtroom to represent the plaintiff (*id*. at p. 16); and

d. Judge Robreno stated that he would dismiss the *Red Wine Restaurant* case without prejudice for failure to prosecute and the Court would retain jurisdiction to consider the imposition of sanctions. (*Id*. at pp. 8, 16)

49. By Order dated January 13, 2020, Judge Robreno:

a. dismissed the *Red Wine Restaurant* case without prejudice;

b. retained jurisdiction over the case for 90 days to consider referring Respondent for disciplinary action; and

c. issued a Rule to Show Cause against Respondent, Mr. Feinstein, and Optimum as to why sanctions should not be imposed.

50. On February 10, 2020, Respondent filed a Response to the Court's Rule to Show Cause.

51. By Order dated February 11, 2020, Judge Robreno:

a. found that it appeared the *Red Wine Restaurant* case was filed "without research or investigation";

b. found that Respondent's conduct appeared to violate multiple Rules of Professional Conduct; and

c. referred Respondent's handling of the *Red Wine Restaurant* case to the Disciplinary

Board for investigation, and if necessary, prosecution.

B. ***Red Wine Restaurant NJ*** Case

52. Joan A. Feinstein, Esquire, is a psychologist with an interest in disability matters.[1] (*See* Rule to Show Cause Hearing, NT 11/10/2021, at 25)

53. From time to time, Respondent had consulted with Ms. Feinstein on legal matters at Optimum. (*Id.*)

54. Prior to May 15, 2020, Respondent told Ms. Feinstein about Alex Torres' legal matter (*id.* at 25), during which time:

  a. Respondent asked Ms. Feinstein whether she "would be involved in the case" (*id.* at 26);

  b. Respondent explained that she "would have a minimal role and they would bring in another attorney at some point" (*id.*); and

  c. Ms. Feinstein agreed to sign the complaint prepared by Respondent's law firm. (*Id.*)

55. At the time Respondent requested Ms. Feinstein to sign the complaint, Respondent failed to inform Ms. Feinstein that:

  a. in January 2020, Judge Robreno had dismissed the ***Red Wine Restaurant*** complaint for failing to include any legal authority for the proposition that a promoter may be held liable under the circumstances presented in the case; and

---

[1] Joan A. Feinstein is not related to prior counsel, Steven C. Feinstein, Esquire.

        b.    she would be signing the identical complaint that had been dismissed by Judge Robreno.

56.  On May 15, 2020, Ms. Feinstein signed a civil complaint identical to the civil complaint dismissed by Judge Robreno in the ***Red Wine Restaurant*** case.

57.  On June 4, 2020, Respondent's office mistakenly filed the civil complaint signed by Ms. Feinstein in the United States District Court, District of New Jersey (the ***Red Wine Restaurant NJ*** case).

        a.    The caption of the case identified the court as "In the United States Court for the Eastern District of Pennsylvania"; and

        b.    The District of New Jersey docketed the ***Red Wine Restaurant NJ*** complaint at No. 1:20-cv-06824-RMB-JS.

58.  Later that same day, the Clerk's Office entered a Quality Control message informing Respondent that the complaint:

        a.    "contains an improper signature" and to "PLEASE RESUBMIT THE DOCUMENT WITH A PROPER ELECTRONIC SIGNATURE" (capital letters in original); and

        b.    contained "deficiencies", including:   (1) the "Caption, Party Information is to be entered in CAPITAL LETTERS"; and (2) "Defendants added to the docket do not reflect the alias information listed in the caption of the complaint."

16

59. On June 8, 2020, Respondent's office filed a "Voluntary Stipulation of Dismissal Without Prejudice" with the Clerk's office, which:

    a. requested that the ***Red Wine Restaurant NJ*** complaint be dismissed without prejudice because the complaint "was filed in error and should have been filed in the Eastern District of Pennsylvania";

    b. failed to contain any signature on the signature line; and

    c. contained the name "Denise Stone, paralegal to Joseph Lento, Esquire," under the blank signature line.

60. On June 9, 2020, the Clerk's Office entered a Quality Control message that stated the notice of voluntary dismissal "submitted by JOSEPH D. LENTO on 6/8/2020 did not contain a proper electronic signature" and requested that Respondent resubmit the signature page with the correct electronic signature.

61. On June 9, 2020, Respondent signed and filed a "Notice of Dismissal Without Prejudice" requesting that the ***Red Wine Restaurant NJ*** complaint be dismissed without prejudice because the complaint "was filed in error and should have been filed in the Eastern District of Pennsylvania."

62. On June 9, 2020, the District Court of New Jersey terminated the ***Red Wine Restaurant NJ*** case.

63.   On June 15, 2020, Respondent filed a letter with the Clerk that stated:

       a.   on June 4, 2020, Respondent's "secretary erroneously filed a complaint" in the United States District Court, District of New Jersey;

       b.   admitted that the "complaint should have been filed in the United States District Court for the Eastern District of Pennsylvania"; and

       c.   requested that his law "firm be refunded $400 for the incorrect filing" in the *Red Wine Restaurant NJ* case.

64.   In response, on June 15, 2020, the Clerk entered a Quality Control message advising that Respondent's letter "was submitted incorrectly" and instructing Respondent to resubmit a letter using the Application for Refund of Fees.

65.   Subsequently on June 15, 2020, Respondent submitted the correct application for a refund with the Clerk's Office.

       a.   On June 26, 2020, the Clerk's Office signed an order refunding Respondent's filing fee.

66.   In Respondent's handling of the *Red Wine Restaurant NJ* case, Respondent:

       a.   failed to make reasonable efforts to ensure that his non-attorney legal assistant's conduct comported with the Rules of Professional Conduct; and

       b.   wasted the federal court's limited time and resources in reviewing Respondent's: (1) incorrectly captioned, signed, and filed

18

complaint;   (2)   unsigned   and   filed
Stipulation and Notice of Dismissal; and (3)
erroneously completed application for refund
request.

### C. *Red Wine Restaurant II* case

67.  Respondent  is  also  the  managing  attorney  at  Lento

Law  Group,  P.C.,  located  at  1500  Walnut  Street,  Suite  500,

Philadelphia, PA  19102.

68.  On  or  before  June  19,  2020,  Respondent  or  a

member of Lento Law Group, P.C., gave Ms. Feinstein another

civil complaint to sign on behalf of Mr. Rosario.

69.  At  the  time  Ms.  Feinstein  was  given  the  civil

complaint,  neither  Respondent  nor  anyone  at  Respondent's

law  firm  had  informed  Ms.  Feinstein  about  Judge  Robreno's

dismissal  of  the  *Red  Wine  Restaurant*  complaint  in  January

2020.

70.  The  civil  complaint  Ms.  Feinstein  was  requested

to sign was:

> a.   identical  to  the  civil  complaint  dismissed
>      by  Judge  Robreno  in  the  *Red  Wine  Restaurant*
>      case; and
>
> b.   failed  to  include  any  "legal  authority  for
>      the  proposition  that  a  promoter  may  be  held
>      liable  under  the  circumstances  presented  in
>      this  case,"  as  was  specifically  ordered  by
>      Judge Robreno on January 13, 2020.

71.  On  June  19,  2020,  Ms.  Feinstein  signed  the  civil

complaint.

72.   As the managing partner at Lento Law Group, P.C., with direct supervisory authority over its employees, Respondent:

    a.   failed to make reasonable efforts to ensure that his firm had in effect measures giving reasonable assurance that all lawyers in the firm conform their conduct to the Rules of Professional Conduct;

    b.   failed to inform Ms. Feinstein about Lento Law Group's prior ***Red Wine Restaurant*** complaint and Judge Robreno's dismissal of the complaint on January 13, 2020, or provide Ms. Feinstein with a copy of Judge Robreno's January 13, 2020 Order dismissing the ***Red Wine Restaurant*** complaint and Judge Robreno's February 11, 2020 Order;

    c.   failed to supervise Ms. Feinstein and confirm that Ms. Feinstein had reasonably concluded that there was a legally supportable basis for bringing a claim under the ADA against Alex Torres Production, Inc., and had included the legal basis in the complaint; and

    d.   knew of Ms. Feinstein's conduct at a time when its consequences could be mitigated and failed to take reasonable remedial action.

73.   Local Federal Rule of Civil Procedure 40.1(b)(3) requires counsel at the time of filing a civil action to "indicate on the appropriate form whether the case is related to any other pending or within one (1) year previously terminated action of this court."

74.   Local Federal Rule of Civil Procedure 40.1(c)(1) provides, in pertinent part, that "[i]f the fact of the

relationship is indicated on the appropriate form at the time of filing, the assignment clerk shall assign the case to the same judge to whom the earlier numbered related case is assigned."

75. On June 19, 2020, Ms. Feinstein signed the civil complaint, which Respondent's office then filed with a Civil Cover Sheet (JS 44), Designation Form, and Case Management Track Designation Form in the EDPA.

   a. The EDPA docketed the civil complaint, hereinafter the ***Red Wine Restaurant II*** case, at No. 20-2966.

76. On the Civil Cover Sheet (JS 44) prepared by Ms. Stone, Respondent's legal assistant, Ms. Stone:

   a. in Section V., "Origin," placed an X in the box indicating that the ***Red Wine Restaurant II*** case was an "Original Proceeding";

   b. did not make any mark next to the box "Reinstated or Reopened"; and

   c. left blank Section VIII, "Related Case(s) if any."

77. Ms. Feinstein place her initial "J" on the attorney signature line of the Civil Cover Sheet.

78. On the Designation Form prepared by Ms. Stone, Ms. Stone incorrectly marked "No" in answer to Question 2 inquiring, "Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending

or within one year previously terminated action in this court?"

79. Ms. Feinstein placed her initial "J" on attorney signature line of the Designation Form certifying "that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in the court."

80. As a result of Ms. Stone's incorrect markings on the Designation Form, which were initialed by Ms. Feinstein, on or before June 26, 2020, the Clerk's Office assigned the **Red Wine Restaurant II** case to the Honorable Mitchell S. Goldberg.

81. As the managing partner at Lento Law Group, P.C., with direct supervisory authority over Ms. Feinstein and his nonlawyer assistants, Respondent's failure to inform Ms. Feinstein and Ms. Stone about Judge Robreno's prior dismissal of the complaint in the **Red Wine Restaurant** case resulted in Ms. Stone's completing and Ms. Feinstein's initialing of incorrect forms and the EDPA's assignment of the **Red Wine Restaurant II** case to Judge Goldberg.

82. Respondent knew of Ms. Stone's and Ms. Feinstein's conduct at a time when its consequences could be mitigated and failed to take reasonable remedial action.

83. Keith L. Altman, Esquire, has a law firm in Michigan and is not licensed to practice law in Pennsylvania. (N.T. 11/10/2021, at 3, 9)

84. At the time the **Red Wine Restaurant II** case was filed, Mr. Altman "was going to be entering into an" associate "relationship with the Lento Law Group on a fairly systematic basis." (*Id.* at 9)

85. On or before June 26, 2020, Respondent contacted Mr. Altman about being co-counsel with Ms. Feinstein in representing Mr. Rosario in the **Red Wine Restaurant II** case.

86. On June 26, 2020, Ms. Feinstein filed a *Pro Hac Vice* application for Mr. Altman, which Judge Goldberg granted the same day.

87. On August 20, 2020, Mr. Altman filed a Request for Default against Alex Torres Productions, Inc., for Alex Torres Productions, Inc.'s failure to appear, plead, or otherwise defend.

        a. The Court granted Mr. Altman's request the same day.

88. On November 5, 2020, Judge Goldberg referred the **Red Wine Restaurant II** case to Magistrate Judge David R. Strawbridge for settlement purposes.

89.   On July 21, 2021, in accordance with Local Civil Rule 40.1(c)(2), the Clerk of Court ordered that the **Red Wine Restaurant II** case be "directly reassigned from the calendar of the Honorable Mitchell S. Goldberg, to the calendar of the Honorable Eduardo C. Robreno, as related to" the **Red Wine Restaurant** case.

90.   By Order dated September 30, 2021, Judge Robreno:

  a.   held that "in light of the multiple irregularities present in this case," Mr. Altman and Ms. Feinstein must show cause why they "should not be sanctioned for their: (1) failure to accurately certify that there were no related cases in violation of RPC 3.3(a); and (2) failure to provide authority in the complaint regarding promoter liability as ordered by the Court on January 13, 2020" in the **Red Wine Restaurant** case;

  b.   instructed Ms. Feinstein and Mr. Altman to file a response to the Rule to Show Cause no later than October 25, 2021; and

  c.   ordered that the Rule was "answerable <u>in person</u>" (underlining in original) in his courtroom on November 10, 2021.

91.   On November 10, 2021, a Show Cause hearing was held before Judge Robreno, at which Mr. Altman, Ms. Feinstein, and John J. Griffin, Esquire, counsel for defendant La Guira, Inc., were in attendance.

92.   During the November 10, 2021 hearing:

  a.   Judge Robreno explained the "relatedness rule" that required Ms. Feinstein to identify that the **Red Wine Restaurant II** case was related to the **Red Wine Restaurant**

24

case that Judge Robreno had dismissed on
January 13, 2020 (*id*. at 13);

b.    Mr. Altman stated that "the individuals who
were involved in actually preparing and
filing the instant case [***Red Wine Restaurant
II*** case] were just unaware that it [***Red Wine
Restaurant*** case] had been filed before" (*id*.
at p. 14) and there was a "lapse of time and
change of personnel" (*id*. at 16);

c.    Mr. Altman recognized that the ***Red Wine
Restaurant*** case was "accidentally filed in
the District of New Jersey" (*id*. at 13);

d.    Mr. Altman revealed that the first time he
had heard about Judge Robreno's January 13,
2020 Order was when he was before Judge
Goldberg (*id*. at 19);

e.    Mr. Altman blamed the Lento Law Group and
Ms. Feinstein for preparing an incorrect
Civil Docket Sheet and incorrect Designation
Form filed with the complaint (*id*. at 21);

f.    Ms. Feinstein admitted she had never met Mr.
Rosario and had "relied on the firm's
judgment" when she signed the complaint (*id*.
at 26);

g.    Mr. Altman noted that "the firm itself,
somebody knew the case was being refiled,
but somehow that message did not get to the
people who actually executed it months
later" (*id*. at 29);

h.    Judge Robreno stated that "there is no
question at all that serious violations of
both our local rules and perhaps the Rules
of Professional Conduct were implicated in
this case," he was "pretty troubled that no
one seems to . . . take responsibility and
take charge," and "[m]aybe this Lento Firm
may be the one" (*id*. at 31); and

      i.   Mr. Altman agreed that "clearly, the firm is responsible for not communicating to the people that had to execute." (*Id.* at 32).

93. On November 16, 2021, Mr. Altman filed a Response to Order to Show Cause alleging that when the **Red Wine Restaurant II** case was filed, "neither the paralegal who prepared the documents nor the attorney who signed the documents was aware the case had been previously filed."

94. By Order dated November 23, 2021, Judge Robreno held:

      a.   The Lento Law Group and Ms. Feinstein are barred from further representation of Mr. Rosario (Order at 2);

      b.   Mr. Altman's *pro hac vice* status is revoked (*id.*);

      c.   the default judgment entered against Alex Torres Production, Inc., is stricken (*id.* at 3);

      d.   Ms. Feinstein, Mr. Altman, Respondent, and the Lento Law Group are referred to the Pennsylvania Disciplinary Board (*id.*);

      e.   Respondent has supervisory or managerial authority over Lento Law Group (*id.* at 4); and

      f.   "the conduct of Joan Feinstein, Keith Altman, Joseph Lento, and the Lento Law Group may constitute violations of Pennsylvania Rules of Professional Conduct 1.1, 1.3, 3.1, 3.3, 4.1, or 5.1."

95. Respondent received a copy of Judge Robreno's November 23, 2021 Order.

96.   On December 22, 2021, Mr. Altman filed a Notice of Appeal of Judge Robreno's November 23, 2021 Order imposing sanctions to the Third Circuit Court of Appeals.

a.  The Third Circuit docketed the appeal at No. 21-3337.

97.   In Respondent's handling of Mr. Rosario's legal matter, Respondent engaged in conduct prejudicial to the administration of justice in that Respondent's conduct needlessly expended the federal court system's limited time and resources in:

a.  reviewing a complaint that lacked legal support under the ADA;

b.  holding a pretrial conference without Respondent's assigning substitute counsel for Mr. Rosario;

c.  examining incorrectly filed complaints, a wrongly completed Civil Cover Sheet and Designation Form, and an improperly submitted refund request;

d.  assigning the **_Red Wine Restaurant II_** case to Judge Goldberg and then reassigning the case to Judge Robreno;

e.  issuing two Rule to Show Cause Orders;

f.  holding two Rule to Show Cause hearings; and

g.  twice referring Respondent's handling of Mr. Rosario's legal matter to ODC.

By his conduct conduct as set forth in paragraphs 31 through 97 above, Petitioner believes and therefore avers that Respondent has violated the following Rules:

a.   RPC 1.1, which states that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation;

b.   RPC 1.3, which states that a lawyer shall act with reasonable diligence and promptness in representing a client;

c.   RPC 5.1(a), which states that a partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct;

d.   RPC 5.1(b), which states that a lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct;

e.   RPC 5.1(c)(1), which states that a lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved;

f.   RPC 5.1(c)(2), which states that a lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action;

g.   RPC 5.3(a), which states that with respect to a nonlawyer employed or retained by or

28

associated with a lawyer a partner and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

h.   RPC 5.3(c)(1), which states that with respect to a nonlawyer employed or retained by or associated with a lawyer, a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved;

i.   RPC 5.3(c)(2), which states that with respect to a nonlawyer employed or retained by or associated with a lawyer, a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and in either case knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action;

j.   RPC 8.4(a), which states that it is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; and

k.   RPC 8.4(d), which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

### CHARGE III:  THE WATSONS MATTER

98.  On or before July 31, 2019, Optimum assigned Mr. Feinstein to represent Conrad J. Benedetto in a breach of contract, confession of judgment, and unjust enrichment matter.

99.  Mr. Feinstein drafted a civil complaint:

    a.   on behalf of Plaintiff, Mr. Benedetto;

    b.   against Defendants, Raheem Watson and Christy Laverne Watson (the Watsons); and

    c.   alleging that Plaintiff loaned $10,000 to Defendant Raheem Watson pursuant to a promissory note and Defendant Raheem Watson had not made any payments in accordance with the terms of the promissory note.

100. On July 31, 2019, Optimum filed the complaint in the Court of Common Pleas of Philadelphia County (First Judicial District). *Benedetto v. Watson et al.*, No. 190704102.

101. On or before August 6, 2019, Optimum retained the services of Russell R. D'Alonzo to make service of process of the civil complaint on Raheem Watson and Christy Laverne Watson.

102. At 6:55 p.m. on August 6, 2019, Mr. D'Alonzo made service of process of the civil complaint by handing a copy of the complaint to Makayla Daniels, the Watsons' daughter, at 1013 Pennsylvania Avenue, Havertown, PA  19083.

103. Pa.R.Civ.P. 400.1 provides that in an action commenced in the First Judicial District, service of original process shall be made:

      a.   in the First Judicial District, by the sheriff or a competent adult, Pa.R.Civ.P. 400.1(a)(1); and

      b.   in any county other than the First Judicial District, by the sheriff of the other county who is deputized by the sheriff of the First Judicial District, Pa.R.Civ.P. 400.1(a)(2).

104. The Watsons did not reside in the First Judicial District.

      a.   The Watsons resided at 1013 Pennsylvania Avenue, Havertown, PA 19083, which is in Delaware County.

105. Russell R. D'Alonzo is not the sheriff of Delaware County.

106. As the managing attorney at Optimum with managerial authority over Respondent's lawyers and nonlawyer assistants, Respondent failed to make reasonable efforts to ensure that employees of Respondent's law firm acted with competence and have service of original process of a complaint that had been filed in the First Judicial District against residents of Delaware County served by the Delaware County sheriff who had been deputized by the sheriff of the First Judicial District.

107. On August 12, 2019, Optimum filed Affidavits of Service establishing proof of service of the complaint on the Watsons, albeit not service in the manner authorized by Pa.R.Civ.P. 400.1.

108. The Watsons did not file an answer to the complaint within 30 days of service.

109. On or before October 29, 2019, Optimum prepared a Praecipe to Enter Default Judgment (Praecipe) against the Watsons that:

> a.  stated the Notice of Intent was mailed to the Watsons, via first class mail, postage prepaid, on October 28, 2019;
>
> b.  attached as Exhibit B an unfiled "Important Notice," dated September 11, 2019, informing the Watsons that they had failed to enter a written appearance and unless they act within 10 days from the date of the Notice, a judgment may be entered against them; and
>
> c.  affixed the signature of Mr. Feinstein.

110. If Optimum had made service of process of the Notice of Intent on September 11, 2019, then Optimum's Praecipe wrongly stated that the Notice of Intent was mailed to the Watsons on October 28, 2019.

111. On October 29, 2019, at 1:59 p.m., Optimum filed, on behalf of Mr. Feinstein, a Certificate of Service that:

> a.  stated, in pertinent part, on September 11, 2019, Mr. Feinstein made service of Notice of Intent to Take Default Judgment (Notice of Intent) on the Watsons via first class

mail, postage prepaid, on September 11, 2019; and

b.   was also dated September 11, 2019.

112. At 2:06 p.m. on October 29, 2019, Optimum filed the Praecipe against the Watsons.

113. Prior to filing the Praecipe on behalf of Mr. Feinstein, Optimum failed to provide Mr. Feinstein with a copy of the Praecipe to review and proofread.

114. As the managing partner at Optimum with managerial authority over lawyers and nonlawyer assistants, Respondent failed to act with competence and diligence to ensure that documents prepared on behalf of an attorney are reviewed and proofread by the attorney prior to filing with the Court.

115. On October 29, 2019, the Court granted the Praecipe and entered a Judgment by Default against the Watsons.

116. On November 11, 2019, the Watsons filed a Petition to Strike Entry of Default Judgment (Petition):

a.   admitting that the Watsons had been personally served with the Complaint on August 12, 2019;

b.   admitting that on November 1, 2019, the Watsons received notice via certified mail that Plaintiff had requested a judgment by default on October 29, 2019;

    c.   alleging that prior to November 1, 2019, the Watsons had not received any other notices of intent to take default for failing to file an answer to the Complaint;

    d.   noting that the Praecipe is dated and signed on October 28, 2019;

    e.   explaining that Pa.R.Civ.P. 237.1(2) states, in pertinent part, that:

> [N]o judgment by default for failure to plead shall be entered by the prothonotary unless the praecipe for entry includes a certificate that a written notice of intention to file the praecipe was mailed or delivered . . . at least ten [10] days prior to the date of the filing of the praecipe to the party against whom judgment is to be entered and to the party's attorney of record, if any.;

    f.   alleging that Plaintiff and Mr. Feinstein "have perpetrated a fraud on this court" by having the Court issue an "unjust default judgment against Defendants"; and

    g.   requesting that Plaintiff's Praecipe for Entry of Default be stricken.

117. By Order docketed on December 5, 2019, the Honorable Edward C. Wright issued a Rule to Show Cause as to why the relief requested in the Watsons' Petition should not be granted, scheduled a Rule Returnable Hearing for January 9, 2020, and ordered that any written response to the Petition should be filed no later than 5 days before the January 9, 2020 hearing.

118. On January 2, 2020, Mr. Feinstein filed Plaintiff's Response to Defendants' Petition to Strike Default Judgment:

    a.   claiming that the Praecipe to Enter Default Judgment, which states that the Notice of Intent to Take Default was mailed on October 28, 2019, "appears to be a clerical error";

    b.   alleging that the Notice of Intent to Take Default Judgment was mailed on September 11, 2019;

    c.   attaching a Certificate of Service for Notice of Intent to Take Default Judgment that was filed on October 29, 2019; and

    d.   failing to attach any proof that a Notice of Intent to Take Default Judgment was mailed on September 11, 2019, such as a: mail receipt; copy of envelope to the Watsons; notarized statement from the individual(s) who drafted the Notice of Intent, addressed the envelope to the Watsons, placed the Notice of Intent in an envelope, and mailed the Notice of Intent; certificate of service filed on or about September 11, 2019; or cover letter for Notice of Intent.

119. On January 9, 2020, Judge Wright held a Rule Returnable Hearing on the Watsons' Petition to Strike, during which time:

    a.   Mr. Watson was in attendance;

    b.   Mr. Watson provided the Court with green card receipts showing that Optimum had notice of the Rule Returnable Hearing;

    c.   Mr. Watson explained that he did not receive the required 10-day Notice of Intent to Take Default Action that Optimum purportedly had

> sent on September 11, 2019 until Optimum
> mailed the Praecipe on October 28, 2019; and

> d.   requested that the default judgment entered
>      against the Watsons be stricken.

120. By Order docketed on January 10, 2020, Judge Wright granted Defendants' Petition to Strike Default Judgment.

121. As the managing partner at Optimum with managerial authority over lawyers and nonlawyer assistants, Respondent failed to make reasonable efforts to ensure that members of Respondent's law firm did not engage in conduct that needlessly expended the court system's limited resources thereby being prejudicial to the administration of justice.

By his conduct as set forth in paragraphs 98 through 121 above, Petitioner believes and therefore avers that Respondent has violated the following Rules:

> a.   RPC 5.1(a), which states that a partner in a
>      law firm, and a lawyer who individually or
>      together with other lawyers possesses
>      comparable managerial authority in a law
>      firm, shall make reasonable efforts to
>      ensure that the firm has in effect measures
>      giving reasonable assurance that all lawyers
>      in the firm conform to the Rules of
>      Professional Conduct;

> b.   RPC 5.3(a), which states that with respect to
>      a nonlawyer employed or retained by or
>      associated with a lawyer a partner and a
>      lawyer who individually or together with
>      other lawyers possesses comparable managerial

authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

c.  RPC 8.4(a), which states that it is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; and

d.  RPC 8.4(d), which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## CHARGE IV:   AMERICAN CLUB OF BEIJING MATTER

122. On September 13, 2019, Mr. Feinstein filed a civil complaint on behalf of American Club of Beijing and against Board of Governors AME in the Court of Common Pleas of Philadelphia County.  *American Club of Beijing v. Board of Governors AME*, No. 19091807.  (*American Club*)

123. On January 7, 2020, Respondent filed a Praecipe for Entry of Appearance on behalf of American Club of Beijing.

124. On January 8, 2020, Mr. Feinstein filed a Withdrawal of Appearance on behalf of American Club of Beijing.

125. On May 19, 2020, the Honorable Gary Glazer transferred *American Club* to Commerce Court.

126. On May 27, 2020, Respondent's paralegal, Denise Stone, filed a Motion for *Pro Hac Vice* Admission to Commerce Court (Motion).

127. The Motion:

    a.   states that Respondent moves for the *pro hac vice* admission of Anthony Scordo, Esquire, an attorney in good standing in New Jersey and an associate at Lento Law Group, P.C.;

    b.   contains the signature of Joseph D. Lento and is dated May 26, 2020; and

    c.   attaches Verification of Joseph D. Lento, Esquire, In Support of Motion for Admission *Pro Hac Vice* (Verification).

128. The Verification, which Respondent signed and dated May 26, 2020, stated Respondent:

    a.   declares, "under penalty of perjury that the foregoing is true and correct";

    b.   "understand[s] that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities";

    c.   is the President of Lento Law Group, P.C. (¶ 1); and

    d.   is "a member in good standing of the Pennsylvania Bar, I presently am not, and have never been, the subject of any disbarment or suspension proceeding before this or any Court" (¶ 3).

129. Respondent's Verification was false in that:

    a.   by Order dated July 17, 2013, the Pennsylvania Supreme Court granted Respondent's Joint Petition in Support of Discipline on Consent and suspended

Respondent from the practice of law for one year, followed by a one-year period of probation with conditions;

b.   by Order dated April 26, 2017, the Supreme Court of New Jersey entered an Order of reciprocal discipline suspending Respondent from the practice of law;

c.   by Order dated September 13, 2013, the Eastern District of Pennsylvania entered an Order of reciprocal discipline suspending Respondent from the practice of law for one year, effective thirty days from the date of its Order; and

d.   Respondent has not been granted reinstatement to the practice of law in the Eastern District of Pennsylvania.

130. On June 1, 2020, Defendants William L. Rosoff, Timothy P. Stratford, and James M. Zimmerman (Defendants) filed a Response and New Matter in Opposition to Plaintiff's Motion for Admission *Pro Hac Vice* (Response).

131. The Response:

a.   alleges that Respondent misstated his disciplinary history as the Pennsylvania Supreme Court suspended Respondent from the practice of law for one year, followed by a one-year period of probation with conditions;

b.   alleges that as a result of Respondent's misstatement and other reasons set forth in the Defendants' Response, good cause exists to deny Respondent's Motion; and

c.   requests that, pursuant to the Court's inherent powers to govern the conduct of attorneys, the Court enter a Rule to Show Cause as to why sanctions should not be imposed.

132. On June 4, 2020, Respondent filed a Praecipe to Attach Certification of Denise Stone and the Certification of Denise Stone (Certification).

133. Ms. Stone's Certification stated that she:

    a.   was a paralegal at Lento Law Group, P.C.;

    b.   "inadvertently stated that Joseph Lento, Esquire has 'never' been the subject of 'any' suspension proceedings in 'any' Court";

    c.   had filed the Motion;

    d.   apologized for her mistake; and

    e.   requested permission to withdraw the Motion and file a "corrected" motion.

134. On June 15, 2020, Defendants filed a Response to Ms. Stone's Certification requesting the denial of the *Pro Hac Vice* Motion and the award of sanctions.

135. In support of its request, Defendants allege, among other reasons, that

    a.   Respondent's signed Verification "egregiously misstated Mr. Lento's disciplinary history" (p. 1);

    b.   Ms. Stone's Certification compounds Respondent's misconduct because he failed to properly supervise Ms. Stone and review the Certification before it was filed (pp. 3-4); and

    c.   Mr. Scordo was not a member of the Pennsylvania Bar at the time he co-signed the Complaint in ***American Club*** as "Attorney

40

> for Plaintiff seeking admission *Pro Hac Vice*." (p. 5)

136. On June 26, 2020, Respondent filed a reply to Defendant's June 16, 2020 Response alleging, in pertinent part, that:

> a. "[i]t is highly unlikely that such a minor issue relating to [Respondent's] disciplinary record would result in the denial of *Pro Hac Vice* admission of Mr. Scordo" (p. 2);
>
> b. Respondent "never attempted to hide" his disciplinary record (p. 4); and
>
> c. Respondent's paralegal's error "was a mere oversight." (p. 5)

137. By Order dated July 14, 2020, the Honorable Ramy I. Djerassi ordered that Respondent's motion for Mr. Scordo's *pro hac vice* admission be denied:

> without prejudice to a refiling that complies in all respects with applicable rules under Pa.R.C.P. 1012.1 and disclosure of movant's disciplinary history. The proposing attorney shall sign the motion and verification.

138. Respondent failed to exercise competence, diligence, and candor to the tribunal in his handling of the Motion for *Pro Hac Vice* Admission.

139. As the President of Lento Law Group, P.C., with managerial authority over nonlawyer assistants, Respondent also failed to make reasonable efforts to ensure that his

paralegal exercised competence, diligence, and candor to the tribunal in drafting and filing motions.

140. By Order dated August 13, 2020, Judge Djerassi sustained Defendants' Preliminary Objections, which had been filed on May 11, 2020, and dismissed the Complaint against Defendants.

141. On August 14, 2020, Respondent filed a Motion for Admission *Pro Hac Vice* (Second Motion) and attached a Verification of Joseph D. Lento, Esquire, In Support of Motion for Admission *Pro Hac Vice* (Second Verification).

142. In the Second Verification, Respondent states:

a. "under penalty of perjury that the foregoing is true and correct";

b. Respondent "understand[s] that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities";

c. Respondent is the President of Lento Law Group, P.C. (¶ 1);

d. Respondent's law license was suspended for one-year in Pennsylvania and Respondent was reciprocally disciplined in New Jersey (¶ 3);

e. "I presently am not the subject of any disbarment or suspension proceedings before this or any Court" (¶ 3); and

f. "I believe that Anthony Scordo, Esquire is reputable and competent (¶ 6)."

143. Respondent signed the Motion as Joseph D. Lento.

144. Respondent's Second Verification failed to:

    a.    include Respondent's disciplinary history in the United States District Court for the Eastern District of Pennsylvania (¶ 3(a));

    b.    comply with Pa.R.Civ.P. 1012.1(b), in that it failed to state that the information required by IOLTA regulations had been provided to the IOLTA Board (¶ 4(a)); and

    c.    comply with Pa.R.Civ.P. 1012.1(d)(2)(iii), in that it failed to state that any proceeds from a settlement will be handled in accordance with RPC 1.15. (¶ 4(b)).

145. On August 23, 2020, Defendants attempted to file a Response to Plaintiff's Second Motion for Admission *Pro Hac Vice* (Second Response), but the Prothonotary's office rejected the filing as Defendants had been dismissed from the ***American Club*** case.

146. By email to Judge Djerassi dated August 26, 2020, with a copy to Respondent, Defendants stated that they:

    a.    had attempted to file their Second Response, but it was rejected by the Prothonotary;

    b.    viewed Respondent's Second Motion as being noncompliant with the Court's July 13, 2020 Order in that Respondent failed to disclose his full disciplinary record and comply with Pa.R.Civ.P. 1012.1;

    c.    "believe[d] we are duty bound to bring this matter to the Court's attention"; and

    d.    attached Defendants' Second Response.

147. In pertinent part, the Second Response alleged Respondent's Second Motion failed to:

a.   include Respondent's disciplinary history in the Eastern District of Pennsylvania (¶ 3(a));

b.   comply with Pa.R.Civ.P. 1012.1(b), in that it failed to state that the information required by IOLTA regulations had been provided to the IOLTA Board (¶ 4(a)); and

c.   comply with Pa.R.Civ.P. "1012.1(d)(2)(iii)," in that it failed to state any proceeds from a settlement would be handled in accordance with RPC 1.15. (¶ 4(b)).

148. On September 1, 2020, upon consideration of the Second Response to Plaintiff's Second Motion for Admission *Pro Hac Vice*, Judge Djerassi ordered that within twenty days, Respondent should:

a.   either file a written reply why the Court should not deny with prejudice Respondent's Second Motion for Mr. Scordo's *pro hac vice* admission;

b.   or file a praecipe before the twentieth day of its Order, withdrawing Respondent's Second Motion and seek the assistance of another Pennsylvania attorney to move for Mr. Scordo's admission.

149. Judge Djarrasi also "encouraged [Respondent] to exercise caution" as "Rules of Professional Responsibility may be implicated here and full disclosure is the essence of a successful *pro hac vice* application."

150. Respondent failed to exercise competence, diligence, and candor to the tribunal in his drafting of the Second Motion for *Pro Hac Vice* Admission.

151. On September 18, 2020, Respondent withdrew his appearance on behalf of American Club of Beijing.

152. On September 22, 2020, Scott Wiggins, Esquire, an associate with Lento Law Group, P.C., filed a Motion for Admission *Pro Hac Vice* seeking to admit Mr. Scordo to handle **American Club**.

153. Mr. Wiggins' Motion for Admission *Pro Hac Vice* failed to comply with Pa.R.Civ.P. 1012.1(b)(1)(i), (c)(1)(i) and (ii), and (d)(2)(i) and (iii).

154. By Order dated October 19, 2020, Judge Djerassi, pursuant to Pa.R.Civ.P. 1012.1(e)(7) and (8), denied Mr. Wiggins' Motion for failing to comply with Pa.R.Civ.P. 1012.1(b)(1)(i), (c)(1)(i) and (ii), and (d)(2)(i) and (iii).

155. As the President of Lento Law Group, P.C., with managerial authority over his law firm's attorneys, Respondent failed to make reasonable efforts to ensure that his law firm's attorneys acted with competence in drafting and filing motions.

156. The totality of Respondent's conduct in handling the *pro hac vice* admission of Mr. Scordo was prejudicial to the administration of justice in that it needlessly expended the limited time and resources of the court system.

By his conduct as set forth in paragraphs 122 through 156 above, Petitioner believes and therefore avers that Respondent has violated the following Rules:

a.   RPC 1.1, which states that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation;

b.   RPC 1.3, which states that a lawyer shall act with reasonable diligence and promptness in representing a client;

c.   RPC 5.1(a), which states that a partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct;

d.   RPC 5.3(a), which states that with respect to a nonlawyer employed or retained by or associated with a lawyer a partner and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

e.   RPC 5.3(c)(1), which states that with respect to a nonlawyer employed or retained by or associated with a lawyer, a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved;

46

f.   RPC 8.1(a), which states that an applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not knowingly make a false statement of material fact;

g.   RPC 8.4(a), which states that it is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

h.   RPC 8.4(c), which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and

i.   RPC 8.4(d), which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

### CHARGE V:   RENEE DOUGALAS MATTER

157. Renee Dougalas was convicted in the following criminal matters in Pennsylvania:

a.   ***Commonwealth v. Renee Dougalas***, No. CP-40-CR-0001221-1995 (on 9/25/1996, convicted of Knowing Possession of a Controlled Substance (M), 35 Pa.C.S. § 780-113(a)(16);

b.   ***Commonwealth v. Renee Dougalas***, No. CP-40-CR-0002286-1996 (on 1/30/1997, convicted of Acquisition of a Controlled Substance by Misrepresentation (F) (two counts, 35 Pa.C.S. § 780-113(a)(12); and Knowing Possession of a Controlled Substance (M) (two counts); and

c.   ***Commonwealth v. Renee Dougalas***, No. CP-40-CR-0002631-1998 (on March 31, 1998, convicted of Acquisition of a Controlled

Substance   by   Misrepresentation   (F)(eleven counts).

158. On June 25, 1999, Ms. Dougalas was convicted in the following criminal matter in New Jersey:

   a.   ***State of New Jersey v. Renee Dougalas***, Indictment No. 99-06-0558 (Mercer County, New Jersey) of Eluding Police, NJ 2C:29-2b (3rd degree), and Possession Controlled Substances, NJ 2C:35-10a(1) (3rd degree).

159. Ms. Dougalas, a licensed pharmacist, relocated to Texas and decided she wanted to expunge or seal her criminal records in Pennsylvania and New Jersey.

160. On February 19, 2020, Ms. Dougalas sent an email to Respondent's office:

   a.   explaining that she had criminal convictions that were "20 plus years old";

   b.   stating that she wanted "to apply for clean slate"; and

   c.   inquiring whether Respondent could "help" her.

161. Shortly   thereafter,   Respondent   called   Ms. Dougalas, during which time:

   a.   Ms. Dougalas informed Respondent that she had multiple felony and misdemeanor convictions in Pennsylvania and New Jersey that were over 20-years-old;

   b.   Ms. Dougalas sent Respondent the docket entries for all of her criminal convictions in Pennsylvania and New Jersey, including her felony convictions;

48

    c.   Respondent received the docket entries for all Ms. Dougalas's Pennsylvania and New Jersey criminal convictions;

    d.   Ms. Dougalas explained that she wanted to clean up her entire criminal record;

    e.   Respondent informed Ms. Dougalas that he could seal or expunge her entire criminal record;

    f.   Respondent stated that his total legal fee would be $5,500 plus filing fees;

    g.   Respondent failed to advise Ms. Dougalas that he could not expunge or seal her Pennsylvania felony convictions; and

    h.   Ms. Dougalas agreed to have Respondent represent her and emailed Respondent all her contact information.

162. Following Respondent's telephone call with Ms. Dougalas, Respondent reviewed the docket entries for all of Ms. Dougalas's Pennsylvania and New Jersey convictions.

163. Thereafter, by email to Ms. Dougalas sent at 4:59 p.m. on February 19, 2020, Respondent wrote that:

    a.   he would "be seeking a record sealing of the 3 applicable cases in Luzerne County and an expungement of the 2 applicable cases in Luzerne County";

    b.   he would "also be seeking an expungement of the applicable New Jersey case";

    c.   Respondent's reduced fee would be $5,500, plus fees and costs; and

    d.   Respondent would get started working with an initial payment of $2,500 and the balance paid over the course of the next several weeks.

164. The following morning, Respondent sent an email to Ms. Douglas that:

    a.    requested Ms. Dougalas to provide him with a detailed autobiography and character letters so that Respondent "can provide positive information and character letters to the Luzerne County District Attorney's Office/Mercer County Prosecutor's Office in an effort to get them to agree to our request"; and

    b.    attached an Engagement Letter for Ms. Dougalas to sign, date, and return to Respondent's office.

165. Respondent's Engagement Letter provided, in pertinent part, that:

    a.    Respondent would "be seeking a record sealing of the 3 applicable Luzerne County, PA cases, and expungement of the 2 applicable Luzerne County PA cases, and an expungement of the Mercer County, NJ case";

    b.    noted that Ms. Dougalas's case docketed at MJ-11102-CR-0000005-1999 was listed as "inactive" and Respondent needed to follow up on this case;

    c.    Respondent's legal fee was $5,500 plus filing fees and costs; and

    d.    Respondent had received $2,500 from Ms. Dougalas as of the date of the Engagement Letter.

166. Later that same day, Respondent and Ms. Dougalas signed and dated Respondent's Engagement Letter.

167. The Clean Slate Limited Access Act (Clean Slate Act), 18 Pa.C.S. § 9122.2 *et. seq.*, provides for granting

limited access to criminal history record information for some misdemeanor convictions, summary offenses, pardons, and dispositions other than convictions.

168. Section 9122.3 of the Clean Slate Act lists exceptions to granting limited access to criminal records as follows:

> (a) Limited access for records under section 9122.2(a)(1) relating to clean slate limited access) shall not be granted for any of the following:
>
>> (2) An individual who at any time has been convicted of:
>>
>>> (i) a felony;
>>>
>>> (ii) two or more offenses punishable by imprisonment of more than two years;
>>>
>>> (iii) four or more offenses punishable by imprisonment of one or more years.

169. Respondent engaged in conduct involving deceit and misrepresentation as Respondent knew at the time he sent Ms. Dougalas his Engagement Letter that her Pennsylvania felony convictions were exceptions to the Clean Slate Act.

170. Respondent failed to possess the competence and diligence necessary for the representation and promptly

ascertain that the patent exceptions to the Clean Slate Act would prohibit Ms. Dougalas from being granted limited access to the release of her Pennsylvania criminal records.

171. To the extent that Respondent knew that Ms. Dougalas's felony convictions could not be sealed, Respondent failed to explain the matter to Ms. Dougalas so that she could make an informed decision regarding the representation.

172. By email to Respondent sent at 4:07 p.m. on February 20, 2020, Ms. Dougalas provided Respondent with most of the information and documents that Respondent had requested in his morning email.

173. By email to Ms. Dougalas sent at 6:14 a.m. on March 24, 2020, Respondent advised Ms. Dougalas that her New Jersey expungement was almost complete.

174. From time to time thereafter, Ms. Dougalas wrote emails to Respondent inquiring about the status of all her legal matters. *See, e.g.*, emails sent at:

        a.   10:37 a.m. on May 15, 2020;

        b.   1:24 p.m. on July 20, 2020;

        c.   11:15 a.m. on August 21, 2020;

        d.   12:46 p.m. on September 4, 2020;

        e.   10:08 a.m. on October 16, 2020;

        f.   6:12 p.m. on December 4, 2020; and

g.   12:56 p.m. on January 25, 2021.

175. At no time during the foregoing email correspondence did Respondent inform Ms. Dougalas that her Luzerne County felony convictions were not eligible for Clean Slate limited access as they were listed as specific exceptions under the Act.

176. By email to Ms. Dougalas sent at 7:02 a.m. on January 28, 2021, Respondent wrote that:

a.   the New Jersey expungement should be finalized shortly;

b.   "[o]nce the Pennsylvania process is complete, [Respondent] anticipate[s] the final result being":

1.   record sealing for one misdemeanor charge;

2.   expungement of one summary offense;

3.   a record sealing for one misdemeanor charge;

4.   "a felony charge that was not able to be addressed";

5.   "There is also one other case which had 11 felony charges which was not able to be addressed" because Respondent "could not have these charges sealed or expunged"; and

6.   an inactive case that Respondent has been trying to have closed.

c.   Ms. Dougalas's "record will be significantly cleaned up once everything is complete, but there will be remaining charges which cannot be sealed or expunged"; and

53

    d.   it "may be worth considering a pardon" of
         Ms. Dougalas's felony convictions after
         Respondent resolved the inactive case.

177. By emails to Respondent on the morning of January

28, 2021, Ms. Dougalas wrote:

    a.   at 8:24 a.m., that "[i]f I had known I could
         not do anything with the pa felony
         convictions I would not have gone through
         this process or spent the money. Cleaned up
         record is just as bad as the original
         record"; and

    b.   at 8:55 a.m., that over one year ago when
         Respondent called her, Ms. Dougalas "made
         clear about [her] felonies in PA and NJ,"
         "sent you [Respondent] the dockets the same
         day," Respondent "never disclosed in the
         initial consult that nothing could be done
         with felonies in PA" and had she "known
         that," she "never would have moved forward,"
         "as a client I made my goals clear to clean
         up my entire record," and her retaining
         Respondent was "clearly" a "waste of [her]
         money."

178. By email exchange on February 8, 2021:

    a.   at 7:00 a.m. Respondent wrote:

         1.   "[a]t no time do I ever state that
              felonies (or misdemeanors) can be
              expunged"; and

         2.   "[b]y the nature of what we were in
              part prospectively seeking, namely, a
              record sealing of applicable cases,
              there would arguably be no fundamental
              relief because sealed records still
              exist and must be disclosed as
              applicable";

    b.   at 10:36 a.m., Ms. Dougalas wrote:

                            54

1.  during Respondent's initial telephone conversation with her, she "told you [Respondent] about [her] past situations and the resultant FELONIES and misdemeanors that resulted therefrom";

2.  "[w]hile on the telephone [she] emailed you [Respondent]" the dockets" that "clearly outlined" her charges;

3.  had Respondent "told" Ms. Dougalas that "'I cannot expunge or seal the Felony charges in PA,'" then Ms. Dougalas "would never have engaged" Respondent's legal services; and

4.  "[n]ot until one year later" did Respondent inform her that she "cannot seal/expunge" her felonies in Pennsylvania.

179. By Respondent's waiting almost one year from the date of his initial consultation to inform Ms. Dougalas that her Pennsylvania felony convictions could not be granted limited access, Respondent:

a.  failed to possess the competence necessary for the representation and examine the court dockets Ms. Dougalas had provided to ascertain the grading of Ms. Dougalas's criminal convictions listed on the dockets;

b.  failed to handle Ms. Dougalas's case with reasonable diligence and promptly conclude that Ms. Dougalas's Pennsylvania felony convictions were not eligible for clean slate limited access;

c.  failed to explain Ms. Dougalas's legal matter to her to the extent necessary for Ms. Dougalas to make an informed decision regarding the representation;

      d.   failed to keep Ms. Dougalas informed of the status of her Pennsylvania Clean Slate Act matter; and

      e.   engaged in conduct involving deceit and misrepresentation.

180. By Respondent's failing to previously explain to Ms. Dougalas that even with a "record sealing of applicable cases," that "there would be no fundamental relief because sealed records still exist and must be disclosed as applicable," Respondent:

      a.   failed to explain Ms. Dougalas's legal matter to her to the extent necessary for Ms. Dougalas to make an informed decision regarding the representation; and

      b.   engaged in conduct involving deceit and misrepresentation.

181. On March 24, 2021, Ms. Dougalas sent an email to Respondent requesting a copy of the New Jersey filing Respondent claimed to have made on behalf of Ms. Dougalas, a receipt from New Jersey for the filing, and a refund of Respondent's unearned fee for Respondent's handling the "sealing" of her Luzerne County felony convictions.

182. Respondent failed to:

      a.   respond to Ms. Dougalas's reasonable requests for information and promptly provide her with the New Jersey pleadings Respondent filed on her behalf; and

      b.   promptly refund his unearned fee and surrender Ms. Dougalas's client's file upon the termination of the representation.

183. On June 16, 2021, Ms. Dougalas filed a Statement of Claim with the Fund.

184. In her Statement of Claim, Ms. Dougalas wrote she had a telephone consultation with Respondent about her "20 yr old felony & misdemeanors" and "wanted to see if I could expunge/seal. He said I could on All."

185. On June 23, 2021, the Fund advised Respondent that Ms. Dougalas had filed a Statement of Claim with the Fund; by letter to Ms. Dougalas dated July 7, 2021, Respondent enclosed a $5,500 check written from the operating account of Lento Law Firm, LLC and Joseph D. Lento, Esq., to Ms. Dougalas, with the notation "refund" in the memo portion of the check; following receipt of Respondent's letter, the Fund closed Ms. Dougalas's claim.

By his conduct conduct as set forth in paragraphs 157 through 184 above, Petitioner believes and therefore avers that Respondent has violated the following Rules:

> a.  RPC 1.1, which states that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation;
>
> b.  RPC 1.2(a), which states that subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as

required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify;

c.   RPC 1.3, which states that a lawyer shall act with reasonable diligence and promptness in representing a client;

d.   RPC 1.4(a)(3), which states that a lawyer shall keep the client reasonably informed about the status of the matter;

e.   RPC 1.4(a)(4), which states that a lawyer shall promptly comply with reasonable requests for information;

f.   RPC 1.4(b), which states that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation;

g.   RPC 1.16(d), which states that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law; and

h.   RPC 8.4(c), which states that it is professional misconduct for a lawyer to

58

engage   in   conduct   involving   dishonesty,
fraud, deceit or misrepresentation.

**CHARGE VI.  LA'SLONDI COPELIN MATTER**

186. Respondent   maintains   a   website   address   at

https://www.studentdisciplinedefense.com/;   the   website

advertises that Respondent:

> a.   "represents     students     and     others     in
>      disciplinary   cases   and   other   proceedings   at
>      colleges   and   universities   across   the   United
>      States";
>
> b.   "helped   countless   students,   professors,   and
>      others   in   academia   at   more   than   a   thousand
>      colleges   and   universities   across   the   United
>      States"; and
>
> c.   is   "admitted   pro   hac   vice   as   needed
>      nationwide."

187. On   or   before   February   4,   2021,   Ms.   La'Slondi

Copelin,  a  student  at  Georgia  State  University  (GSU),  had

received notice that she would be expelled from GSU.

188. On   February   4,   2021,   Ms.   Copelin   contacted

Respondent   regarding   her   pending   GSU   expulsion,   during

which time:

> a.   Ms.   Copelin   advised   Respondent   that   she
>      needed   an   attorney   to   handle   her   college
>      discipline matter;
>
> b.   Ms.   Copelin   explained   that   her   deadline   to
>      respond   to   the   GSU   President   about   her
>      expulsion was "end of business" on February
>      9, 2021;
>
> c.   Respondent   informed   Ms.   Copelin   that   he
>      could   represent   her,   his   law   firm   "expands
>      nationwide,"   and   Respondent   was   representing
>      several clients in Georgia; and

d.    Respondent negotiated a $350 telephone consultation fee with Ms. Copelin.

189. Thereafter, Respondent sent Ms. Copelin a consultation agreement and charged his $350 fee to Ms. Copelin's credit card.

190. On February 5, 2021:

a.    Ms. Copelin returned a signed consultation agreement; and

b.    Respondent requested that Ms. Copelin call him at 1:45 p.m. the following day to discuss her case.

191. On February 6, 2021, Respondent had a telephone consultation with Ms. Copelin about her school discipline matter.

192. On the morning of February 7, 2021:

a.    Respondent negotiated a $7,500 retainer fee with Ms. Copelin;

b.    Ms. Copelin advised Respondent that she would retain Respondent to handle her school discipline matter; and

c.    Respondent agreed to send Ms. Copelin a retainer agreement, with an outline of his services and payment dates, for Ms. Copelin to sign.

193. By email to Ms. Copelin dated February 7, 2021, sent at 7:30 a.m., Respondent:

a.    explained that "[w]e can proceed with a payment of $2,500 at this time" and that Ms. Copelin was to make payment of $2,500 on February 14, 2021, and $2,500 on March 7, 2021;

> b. inquired whether Ms. Copelin would "prefer [Respondent] using the card on file?"; and
>
> c. stated if Ms. Copelin agreed to proceed, then Respondent's "office can process the payment today and Keith [Altman, Esquire] and I can proceed."

194. Respondent did not send Ms. Copelin a retainer agreement on February 7, 2021, as he had agreed to do.

195. By email to Respondent dated February 8, 2021, sent at 7:09 a.m., Ms. Copelin:

> a. inquired as to the realistic odds of what would happen;
>
> b. explained that she would leave school voluntarily so as to not have the expulsion documented on her transcript ; and
>
> c. requested that Respondent "call so [she] can remit payment."

196. By email to Ms. Copelin dated February 8, 2021, sent at 7:49 a.m., Respondent replied:

> a. it was impossible to provide odds of success, but if Respondent were involved, the "chances of a better outcome increase, if not significantly increase"; and
>
> b. it would be difficult to avoid a transcript notation, "so the only viable option is to try to maneuver for a suspension or less and go back to school."

196. Respondent did not call Ms. Copelin to obtain her payment information as Ms. Copelin had requested that Respondent do.

197. At 9:51 a.m. on February 9, 2021, Ms. Copelin called Respondent's office, during which time:

    a. Ms. Copelin inquired as to the status of her case because she had not yet received the retainer agreement and her response to the GSU president was due that day;

    b. Respondent agreed to send a retainer agreement to Ms. Copelin; and

    c. Respondent told Ms. Copelin "not to worry" because he would meet her deadline by the end of the day.

198. On February 9, 2021, Respondent charged $2,500 to Ms. Copelin's credit card.

199. At 8:05 p.m. on February 9, 2021, Mr. Altman sent an email with an attached letter to GSU President Becker:

    a. the text of the email stated that it was from "Keith Altman, The Law Office of Keith Altman" and that Mr. Altman is licensed in California and Michigan; and

    b. the attached letter was on stationary with letterhead from "Lento Law Firm" and signed by Respondent with a footnote indicating Respondent is "[l]icensed in New York, New Jersey, and Pennsylvania."

200. In the text of the letter, Respondent argued that Ms. Copelin should not be expelled because:

    a. it would "impose a punishment so severe that she will not have an opportunity to earn a degree";

    b. expulsion "does not serve any useful purpose and appears to be retribution";

      c.   "no rationale was provided [as] to why expulsion was the most appropriate disciplinary option";

      d.   Respondent's review of GSU "policies shows no guidelines for the imposition of such a severe sanction";

      e.   an expulsion "appears to be arbitrary and capricious" and "seems disproportionate to [Ms. Copelin's] misconduct"; and

      f.   a suspension is "an adequate consequence of [Ms. Copelin's] actions."

201. Neither Respondent nor Mr. Altman are licensed to practice law in Georgia.

202. By Respondent's handling of Ms. Copelin's legal matter, Respondent:

      a.   engaged in the unauthorized practice of law in Georgia; and

      b.   knowingly assisted another to engage in the unauthorized practice of law in Georgia.

203. Respondent failed to act with reasonable diligence when he failed to:

      a.   send Ms. Copelin's letter to President Becker by the close of business on February 9, 2021; and

      b.   copy Ms. Copelin on Respondent's letter to President Becker.

204. Respondent failed to provide Ms. Copelin with a written fee agreement that set forth the basis and rate of his legal fee as Respondent repeatedly agreed he would do.

205. By email to Ms. Copelin sent at 8:06 p.m. on February 9, 2021, Mr. Altman wrote "Forgot to copy you" and attached a copy of his letter to President Becker.

206. By email to Respondent and Mr. Altman sent at 11:29 p.m., Ms. Copelin replied that:

       a.   time was "of the essence" and Respondent's "letter was not sent timely";

       b.   Respondent failed to copy Ms. Copelin on the letter sent to GSU;

       c.   Respondent failed to advise Ms. Copelin that the letter could not be sent before the end of the business day;

       d.   Respondent and Mr. Altman were not licensed to practice law in Georgia; and

       e.   Respondent failed to send a retainer agreement as Ms. Copelin had requested and Respondent had repeatedly agreed to do.

207. By email to Ms. Copelin sent the following morning, Respondent:

       a.   claimed the letter to President Becker was sent timely because if the letter "was due at a specific time, they would have needed to specify the time";

       b.   blamed Ms. Copelin for waiting "most of the two calendar weeks until [she] reached out to" Respondent;

       c.   stated that "[w]e did everything we could given the fact that we were only officially retained yesterday";

       d.   wrote that Respondent's "support of [Ms. Copelin] was not intended to be in a legal capacity at this time. It was as an advisor

65

which you are allowed under the policies of
the university";

e.   asserted that "there was insufficient time
to get [Ms. Copelin] the retainer
yesterday"; and

f.   informed Ms. Copelin that Respondent would
only charge her for the first $2,500 because
Respondent "completed the letter in support
of [her] appeal on an expedited basis."

208. Respondent's claim that he had not "intended to"
write to GSU in his "legal capacity" is knowingly false in
that Respondent's letter to GSU:

a.   was written on stationery from Lento Law
Firm;

b.   included Respondent's email address of
joseph@StudentDisciplineDefense.com;

c.   put forth legal arguments as to why Ms.
Copelin should be suspended and not expelled
from GSU;

d.   was signed "Joseph Lento, Esq."; and

e.   added a "cc" of Respondent's letter to
"Keith Altman, Esq."

209. Respondent engaged in conduct involving deceit
and misrepresentation by Respondent's claiming that his
"support of" Ms. Copelin was not in his "legal capacity,"
in that:

a.   on Respondent's law firm website, Respondent
advertises that he practices education law
and provides student discipline defense;

b.   nowhere in Respondent's email correspondence
with Ms. Copelin on February 6, 7, 8, and 9,

2021, does Respondent explain that he was being retained, for a fee of $7,500, as a non-legal "advisor" for Ms. Copelin's school disciplinary matter; and

c.   Respondent's correspondence to President Becker does not contain any disclaimer that Respondent is not representing Ms. Copelin in his legal capacity when Respondent's correspondence is written on his law firm's legal stationery, makes legal arguments, and is signed by Respondent with the title "Esq."

210. By email to Respondent sent at 3:18 p.m. on February 10, 2021, Ms. Copelin:

a.   rejected Respondent's claim that he was not hired as Ms. Copelin's attorney because: Ms. Copelin found Respondent's name listed on an internet website as an "education lawyer"; Ms. Copeline called Respondent "for representation"; Respondent contacted GSU on behalf of Ms. Copelin in his "legal capacity"; and if Respondent was not acting in his "legal capacity," then "why would [Respondent] be contacting [her] school writing a letter on [her] behalf past business hours?";

b.   explained that she "would never agree to pay $2500 just for a letter"; and

c.   advised that she did not authorize payment of $2,500 and instructed Respondent not to charge her credit card.

211. Respondent attempted to charge an excessive fee for his representation of Ms. Copelin.

212. On February 23, 2021, Respondent sent an email to Ms. Copelin blaming her for Respondent's misconduct and claiming:

67

a.   Ms. Copelin "did not retain [Respondent] until the morning that [her] appeal was due- February 9th";

b.   Respondent's "original intent was [] to ghostwrite an appeal to be submitted in" Ms. Copelin's name, but redrafted the letter under Mr. Altman's and Respondent's name after Respondent learned that Ms. Copelin had already sent a letter under her name;

c.   that Ms. Copelin was "undoubtedly aware" that neither Mr. Altman and Respondent were members of the Georgia Bar and she "never raised any concerns or issues";

d.   Ms. Copelin's raising the issue of Respondent's and Mr. Altman's unauthorized practice of law "after the fact smacks of bad faith"; and

e.   Respondent was willing to refund $1,000 of the $2,500 charged "in the spirit of good faith."

213. Ms. Copelin rejected Respondent's offer of a $1,000 refund.

214. On June 4, 2021, Ms. Copelin filed a Statement of Claim with the Fund alleging that Respondent was "hired as student discipline attorney" and "sent a letter to my school after deadline."

215. On June 11, 2021, Kathy Peifer Morgan, Executive Director and Counsel of the Fund, notified Respondent that Ms. Copelin had filed a Statement of Claim with the Fund; on July 7, 2021, Respondent wrote a letter to Ms. Copelin and enclosed a $2,500 check to Ms. Copelin, written from

the operating account of Lento Law Firm, LLC and Joseph D. Lento, Esq., with the notation "client refund" in the memo portion of the check; after receipt of notice of Respondent's refund to Ms. Copelin, the Fund dismissed Ms. Copelin's claim against Respondent.

By his conduct as set forth in paragraphs 185 through 215 above, Petitioner believes and therefore avers that Respondent has violated the following Rules:

   a.   RPC 1.1, which states that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation;

   b.   RPC 1.2(a), which states that subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify;

   c.   RPC 1.3, which states that a lawyer shall act with reasonable diligence and promptness in representing a client;

   d.   RPC 1.4(a)(3), which states that a lawyer shall keep the client reasonably informed about the status of the matter;

e.   RPC 1.5(a), which states that a lawyer shall
     not enter into an agreement for, charge, or
     collect an illegal or clearly excessive fee.
     The factors to be considered in determining
     the propriety of a fee include the
     following: (1) whether the fee is fixed or
     contingent; (2) the time and labor required,
     the novelty and difficulty of the questions
     involved, and the skill requisite to perform
     the legal service properly; (3) the
     likelihood, if apparent to the client, that
     the acceptance of the particular employment
     will preclude other employment by the
     lawyer; (4) the fee customarily charged in
     the locality for similar legal services; (5)
     the amount involved and the results
     obtained; (6) the time limitations imposed
     by the client or by the circumstances; (7)
     the nature and length of the professional
     relationship with the client; and (8) the
     experience, reputation, and ability of the
     lawyer or lawyers performing the services;

f.   RPC 1.16(d), which states that upon
     termination of representation, a lawyer shall
     take steps to the extent reasonably
     practicable to protect a client's interests,
     such as giving reasonable notice to the
     client, allowing time for employment of other
     counsel, surrendering papers and property to
     which the client is entitled and refunding
     any advance payment of fee or expense that
     has not been earned or incurred. The lawyer
     may retain papers relating to the client to
     the extent permitted by other law;

g.   RPC 5.5(a), which states that a lawyer shall
     not practice law in a jurisdiction in
     violation of the regulation of the legal
     profession in that jurisdiction, or assist
     another in doing so;

h.   RPC 8.4(a), which states that it is
     professional misconduct for a lawyer to
     violate or attempt to violate the Rules of
     Professional Conduct, knowingly assist or

70

induce another to do so, or do so through the acts of another;

i.    RPC 8.4(c), which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and

j.    RPC 8.5(a), which states that a lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct, via Georgia RPC 5.5(a), which states that a lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction or assist another in doing so.

WHEREFORE, Petitioner prays that your Honorable Board appoint, pursuant to Rule 205, Pa.R.D.E., a Hearing Committee to hear testimony and receive evidence in support of the foregoing charges and upon completion of said hearing to make such findings of fact, conclusions of law, and recommendations for disciplinary action as it may deem appropriate.

Respectfully submitted,

OFFICE OF DISCIPLINARY COUNSEL

Thomas J. Farrell
Chief Disciplinary Counsel

71

By    *Harriet R. Brumberg*
      Harriet R. Brumberg
      Disciplinary Counsel

1601 Market Street
Suite 3320
Philadelphia, PA 19103
(215) 560-6296

BEFORE THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL,: No.    Disciplinary Docket
                       Petitioner :    No. 3
                              :
         v.           : No.    DB
                              :
                              : Atty. Registration No. 208824
JOSEPH D. LENTO        :
                   Respondent : (Philadelphia)

## **VERIFICATION**

    I verify that the statements made in the foregoing Petition are true and correct to the best of my knowledge or information and belief.  This statement is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

 6/3/2022
——————————————

*Harriet R. Brumberg*
——————————————————————
Date                           Harriet R. Brumberg
                             Disciplinary Counsel

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania*: *Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  Office of Disciplinary Counsel

Signature:  *Harriet R. Brumberg*

Name:  Harriet R. Brumberg, Disciplinary Counsel

Attorney No. (if applicable):  31032

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          | : |                          |
| **IN THE MATTER OF:**    | : | **MISCELLANEOUS**        |
|                          | : |                          |
| **JOSEPH D. LENTO**      | : | **No.2:13-MC-00195-PD**  |
|                          | : |                          |
|                          | : |                          |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO UNSEAL TRANSCRIPT IN REINSTATEMENT HEARING</u>**

On July 15, 2019, a Committee of this Court, consisting of the Honorable Paul S. Diamond, Honorable Robert Kelly, and Honorable Marilyn Heffley, ("Committee"), held a hearing on Joseph D. Lento's Petition For Reinstatement. The transcript of that hearing is currently under seal. The Office of Disciplinary Counsel ("ODC") requests that this Court unseal the transcript for use in a pending Pennsylvania disciplinary proceeding against Mr. Lento. Unsealing the transcript will further the important interests in ensuring consideration of all evidence relevant to the quantum of discipline to be imposed should the Special Master find that Mr. Lento violated at least one Rule of Professional Conduct (RPC). Moreover, unsealing the transcript will not prejudice Mr. Lento as the September 16, 2013 Order of this Court suspending Mr. Lento from the practice of law before the United States District Court for the Eastern District of Pennsylvania ("the Eastern District"), Mr. Lento's reinstatement petition, and Mr.

Lento's July 23, 2019 motion to withdraw his petition after the July 15, 2019 reinstatement hearing are publicly available.

## **PROCEDURAL HISTORY**

By Order dated July 17, 2013, Mr. Lento was suspended from the practice of law in Pennsylvania for one year. Thereafter, by Order dated July 30, 2013, the Honorable Petrese B. Tucker, Chief Judge of this Court, directed Mr. Lento to inform the Court, within thirty days, of any claim that the imposition of identical discipline upon the grounds set forth in Local Rule of Civil Procedure 83.6(II)(D), would be unwarranted. (Doc. No. 2)  Mr. Lento did not file any claim opposing the imposition of identical discipline.  By Order dated September 16, 2013, Judge Tucker suspended Mr. Lento from the practice of law in this Court for one year, effective 30 days from July 17, 2013, and until further order of this Court. (Doc. 4)

On September 14, 2014, the Pennsylvania Supreme Court reinstated Mr. Lento to active status, effective immediately.[1] Over four years later, on May 12, 2019, Mr. Lento filed a Petition for Reinstatement with this Court.  On May 6, 2019, Chief Judge Juan R. Sanchez referred Mr. Lento's reinstatement

---

[1] Because Mr. Lento's Pennsylvania suspension did not exceed one year, Pa.R.D.E. 218 did not require Mr. Lento to petition for reinstatement or have a reinstatement hearing.

matter to a Committee, chaired by the Honorable Paul S. Diamond, to make a recommendation to the Court.

On July 15, 2019, Mr. Lento's reinstatement hearing was held before this Committee. The same day, Judge Diamond directed that the audio recording and transcript of the hearing be sealed and impounded "until further order of the Court" (Doc. 10); on July 22, 2019, the transcript was filed under seal.

Then on July 23, 2019, Mr. Lento filed a motion to withdraw his reinstatement petition. (Doc. 14) By Order dated July 23, 2019, Judge Sanchez granted Mr. Lento's motion to withdraw his Petition for Reinstatement.

On June 3, 2022, ODC filed a Petition for Discipline against Mr. Lento charging him with violations of the Rules of Professional Conduct in six separate matters. *Office of Disciplinary Counsel v. Joseph D. Lento,* No. 80 DB 2022. Mr. Lento's disciplinary hearing is scheduled to be held before a Special Master from January 23, 2023 through January 27, 2023.

## ARGUMENT

A party seeking the sealing of part of a judicial record, "'bears the burden of showing that the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'" *In re Cendant Corp.*, 260 F.3d 183, 194 (3rd

Cir. 2001)(citation omitted).  District courts, moreover, must be "cognizant of when the reasons supporting sealing in a specific case (if any are found) have either passed or weakened...." *Id*. at 196.  Thus, "[e]ven if a sealing order was proper at the time when it was initially imposed, the sealing order must be lifted at the earliest possible moment when the reasons for sealing no longer obtain." *Id*.  *See also Miller v. Indiana Hospital*, 16 F.3d 549, 551-52 (3ʳᵈ Cir. 1994)(even if initial sealing was justified, "when there is a subsequent motion to remove such a seal, the district court should closely examine whether circumstances have changed sufficiently to allow the presumption allowing access to court records to prevail.").

This Court's local rules do not include any provision specifically addressing the sealing of transcripts from reinstatement proceedings, nor has ODC found any decisions addressing the issue.  Local Rule VII--Reinstatement, Section H, however, provides that the judges to whom a reciprocal disciplinary proceeding is assigned shall make a report and recommendation to the court, which "will be filed under seal." Any objections to the report and recommendation, as well as additional submissions by any party, shall also be filed under seal.  *Id*.  After the Court decides the matter, "the report and

4

recommendation, any objections, and any submissions shall be unsealed unless otherwise ordered by the court." *Id.*

In this case, Judge Diamond ordered that the transcript of Mr. Lento's hearing be sealed *prior* to Mr. Lento's filing his motion to withdraw his reinstatement.  Furthermore, all orders and submissions, including Mr. Lento's motion to withdraw setting forth the reasons for his decision to withdraw his reinstatement petition, are publicly available.  In addition, given the publicly known information regarding Mr. Lento's reinstatement proceeding, the privacy interests which presumably led Judge Diamond to seal the transcript are substantially diminished.  As the transcript will not be used during ODC's case-in-chief, the transcript will not impact the merits of disciplinary charges.  Accordingly, Mr. Lento will not be prejudiced by unsealing the transcript for use by ODC, the Pennsylvania Disciplinary Board, and the Supreme Court of Pennsylvania in Mr. Lento's scheduled disciplinary proceeding.[2] *See* **Chicchi v. Southeastern Pa. Trans. Auth.**, 727

---

[2]  As set forth in ODC's motion, Pennsylvania disciplinary proceedings are open to the public.  If ODC were to introduce the transcript, it could be accessible to the public under the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania.  Mr. Lento can apply for a protective order if he believes that the transcript of the July 15, 2019 reinstatement hearing transcript contains confidential or privileged information that should not be disclosed to the public.  *See* Disciplinary Board Rule § 93.106(b).  If a protective order were to be issued, the transcript will be

A.2d 604, 607 (Pa. Commw. Ct. 1999)(when evaluating the admissibility of relevant evidence, prejudice occurs if the evidence poses the risk of an "undue tendency to suggest a decision on an improper basis.")

Moreover, ODC has a substantial need for the transcript. D.Bd. Rule § 89.151(b) provides that participants may offer any evidence that "is relevant and material" to the type of discipline to be imposed, and specifies the subjects "particularly helpful to the Board" include "date of admission of each jurisdiction to which admitted" and "a statement of every disciplinary proceeding or procedure of inquiry concerning the standing of the respondent-attorney as a member of any profession." Should the Special Master find that Mr. Lento committed at least one violation of the Rules of Professional Conduct, then ODC would introduce Mr. Lento's record of attorney discipline and status of admission in each jurisdiction where he was admitted, including the Eastern District of Pennsylvania.

In Mr. Lento's motion to withdraw his petition for reinstatement to the EDPA, Mr. Lento wrote that he was seeking to withdraw because: he and his counsel "did not fully appreciate and/or fully prepare properly for the reinstatement

---

treated as a confidential document.

6

hearing"; there were "a number of issues that were raised by this Honorable Court"; and in the future, Mr. Lento would "seek a new reinstatement hearing where he . . . dealt with the issues raised by this Honorable Court." (*Id.*, ¶¶ 2, 3, 5) Surely the transcript from Mr. Lento's reinstatement hearing and the issues raised by this Committee, which remain unknown and unanswered, would be highly relevant in determining the quantum of discipline to be imposed.

## CONCLUSION

For all of the foregoing reasons, ODC requests that this Honorable Committee enter an order unsealing the transcript of the July 15, 2019 reinstatement hearing and allowing the use of that transcript in Mr. Lento's pending Pennsylvania disciplinary proceeding.

OFFICE OF DISCIPLINARY COUNSEL

Thomas J. Farrell
Chief Disciplinary Counsel

By_____
   Harriet R. Brumberg
   Disciplinary Counsel
   Pa. Attorney Registration No. 31032

1601 Market Street
Suite 3320
Philadelphia, PA  19103
(215) 560-6296

7

<u>VERIFICATION</u>

I, Harriet R. Brumberg, Disciplinary Counsel, verify that the statements made in the foregoing Motion to Unseal Transcript in Reinstatement Hearing and Memorandum in Support of Motion to Unseal Transcript in Reinstatement Hearing are true and correct to the best of my knowledge, information and belief and are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

_____11/17/2022_____
Date

Harriet R. Brumberg
Disciplinary Counsel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| | : |
| **IN THE MATTER OF:** | : **MISCELLANEOUS** |
| | : |
| **JOSEPH D. LENTO** | : **No.2:13-MC-00195-PD** |
| | : |

## CERTIFICATE OF SERVICE

I declare that copies of the foregoing Motion to Unseal Transcript in Reinstatement Hearing and Memorandum in Support of Motion to Unseal Transcript in Reinstatement Hearing were sent today, via first-class mail with postage prepaid to:

        James C. Schwartzman, Esquire
        Matthew Brunelli, Esquire
        Stevens and Lee
        1500 Market Street
        East Tower, 18th Floor
        Philadelphia, PA  19102


_____11/17/2022_____
DATE

                    By_____
                       Harriet R. Brumberg
                       Disciplinary Counsel
                       Pa. Attorney Registration No. 31032

1601 Market Street
Suite 3320
Philadelphia, PA  19103
(215) 560-6296